**SCHILLNER et al. v. H. VAUGHAN CLARKE & CO. et al.**

No. 182.

Circuit Court of Appeals, Second Circuit.

April 2, 1943.

Miller, Hubbell & Evans, of Utica, N. Y. (Henry L. Schimpf, Jr., of Philadelphia, Pa., of counsel), for appellants.

Leonard W. Ferris, of Utica, for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This action is based upon the provisions of section 12 of the Securities Act of 1933, 15 U.S.C.A. § 77l which is printed in the margin[1] with immaterial omissions. The plaintiffs are a widow and her daughter, both well advanced in years and lacking experience in financial matters, to whom H. Vaughan Clarke & Company, a stock brokerage house whose main office was in Philadelphia, sold two blocks of common stock,

---

[1] "Any person who—

"(1) sells a security in violation of section 77e, or

"(2) sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

each for 100 shares, in Kinsey Distilling Company. The sales were made at Rome, N. Y., in September 1936 and May 1937, respectively, and for each block of stock the plaintiffs paid $700. They were induced to make the purchases by Mr. Adams, an employee of the corporate defendant, who called at their home and made oral representations concerning the distilling company, its officers, one of whom was Mr. H. Vaughan Clarke, and the desirability of purchasing the stock. For several years Mr. Adams, while in the employ of a different brokerage house, had been accustomed to advise the plaintiffs concerning their investments. They had confidence in him, relied upon his statements and made no attempt to investigate the merits of the distillery stock. It was paid for by turning over to Mr. Adams certain securities which he converted into cash. Certificates for the distillery stock were sent from the broker's Philadelphia office by mail addressed to the plaintiffs at their home and there delivered. In 1939 after learning that the distilling company was in bankruptcy, they tendered the stock certificates to H. Vaughan Clarke & Company and then brought the present action to recover from the defendants the purchase price of the stock with interest thereon, no dividend having ever been paid on the stock. The individual defendant controls the corporate defendant, being its sole stockholder, and his liability is based on section 15 of the Act, 15 U.S.C.A. § 77o. The case was tried to a jury which returned a verdict for the plaintiffs.

The appellants' first contention is that the district court lacked jurisdiction of the subject matter of the action because the plaintiffs failed to prove a cause of action under section 12(2). The argument assumes that this section requires the false or misleading statement which gives rise to the liability to be transmitted by mail or by use of an interstate instrumentality of transportation or communication. We do not think that this is the inevitable, or even the most natural, meaning of the statutory language. Liability to repay the consideration received is imposed upon any person who "sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication" of the untrue or misleading character described in the section. To accept appellant's construction would render the phrase "oral communication" of most limited application because the section would then reach only interstate telephone calls or conversations where the parties might be talking across a state line. It would seem much more likely that Congress intended to make the statute applicable if one sells a security by use of the mails, even though the seller's untrue or misleading statement is communicated orally and intrastate. In the case at bar the contract of sale was concluded orally and the stock was paid for by the buyers without any use of the mails, but the mails were used for delivery of the stock certificate to the buyers. In our opinion such a transaction falls within both the letter and the purpose of the statute. Section 2(3) of the Act, 15 U.S.C.A. § 77b (3) provides that "unless the context otherwise requires" the term "sale" or "sell" "shall include every contract of sale or disposition of * * * a security or interest in a security, for value." Delivery of the stock certificate pursuant to a contract of sale would seem to be a "disposition of * * * a security" within this definition; consequently the seller who mails the certificate[2] to the buyer "sells a security * * * by the use * * * of the mails."

It must be conceded, however, that such expressions of judicial opinion as we have been able to find are not in accord with this view. In Gross v. Independence Shares Corp., D.C.E.D.Pa., 36 F.Supp. 541, at page 543, Judge Bard stated flatly that delivery of a security by mail after sale did not bring section 12(2) into play. Siebenthaler v. Aircraft Accessories Corp.,[2½] W. D.Mo., is to the same effect.[3] The opinion

---

[2] The term "security" includes "stock * * * or, in general, any interest or instrument commonly known as a 'security.'" 15 U.S.C.A. § 77b(1).

[2½] No opinion for publication.

[3] In Murphy v. Cady, D.C.Me., 30 F. Supp. 466, 469, Judge Peters remarked parenthetically that the section "applies only to inter-state communications." A

similar dictum may be found in Independence Shares Corp. v. Deckert, 3 Cir., 108 F.2d 51, 54 where Judge Biggs described the statutory right as granted to one who has purchased securities "upon an untrue statement of a material fact made by the use of any means of transportation or communication in interstate commerce." See also Hearings before Committee on

in the Gross case advances the argument that since Congress specifically provided in section 5 of the Act, 15 U.S.C.A. § 77e, that delivery by mail after sale should be unlawful in the case of unregistered securities, a failure to be similarly specific in section 12(2) indicated an absence of congressional intention to create civil liability for the mere delivery by mail when the misrepresentations were oral and intrastate. Section 5 reads in part as follows:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

It is true that the word "sell" in the phrase "to make use of * * * the mails to sell," as used in subdivision (a) (1) of section 5 cannot be given a meaning broad enough to include delivery of the stock certificate after sale without making purposeless the phrase in subdivision (a) (2) "for delivery after sale." But the word "sell" may have a narrower meaning in section 5 than it has in section 12. The broad definition set out in section 2 is to be accorded "unless the context otherwise requires." In section 5 where the draftsman differentiated between use of the mails to sell and use of the mails for delivery after sale, the context requires a narrower definition of the term "sell," but there is nothing in section 12 to require the definition to to be so narrowed. Indeed, if the word "sell" in section 12(1) is given a meaning so narrow as to exclude a transaction where the mails are used for delivery of a security after sale, then civil liability will be imposed on one who violates section 5(a) (1) but not on one who violates section 5(a) (2), although in either case the act is unlawful and the violator may be punished criminally under § 24, 15 U.S.C.A. § 77x. To our minds it is inconceivable that Congress intended any such distinction. In de-

claring unlawful the transactions described in section 5 Congress meant to exert its power to the full constitutional extent permitted by the commerce clause and the postal clause.[4] In imposing by section 12(1) civil liability upon "any person who * * * sells a security in violation of section 5" we cannot doubt that the liability was intended to embrace all transactions made unlawful by section 5. This was accomplished by using the word "sell" in the broad sense stated in the definition, 15 U.S. C.A. § 77b. Clearly the word has the same meaning in subdivision (2) as in subdivision (1) of section 12. Consequently we hold that the use of the mails for delivery of the certificate to the buyers was enough to bring the transaction within the section. And since section 22(a), 15 U.S.C.A. § 77v (a), confers upon the district court in the district where the sale took place, jurisdiction of actions at law brought to enforce any liability or duty created by this subchapter, the appellant's first contention cannot be sustained.

■ It is next contended that the evidence failed to prove a cause of action under section 12(2). As Mr. Adams did not testify there was no contradiction of the statements ascribed to him by the plaintiffs. Whether his statements were untrue or misleading by reason of omitted material facts was a question for the jury under proper instructions, and no complaint is made as to the court's charge. The contention that the proof was insufficient is plainly futile.

■ The third point is based on section 13 of the Act, 15 U.S.C.A. § 77m. This provides that an action to enforce liability under section 12(2) must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." The action was commenced on July 25, 1939 and the plaintiffs testified that they did not discover the untruth or misleading omissions of the statements which induced their purchases until after the end of the year 1938. The appellants contend that in the exercise of reasonable diligence the discovery should have been made before July 25, 1938, and so the action was barred. The argument is rested chiefly on Adams'

Interstate & Foreign Commerce on H. R. 4344, etc., 77th Cong., 2d Sess. (1941), 807, where the problem was pointed out.
4 See H.R.Rep. No. 85, 73rd Cong. 1st

Sess. (1933), 10; Sen.Rep. No. 51, 73rd Cong. 1st Sess. (1933), 6; 77 Cong.Rec. 2912, 2914, 2912-20, 2983-4.

statement that the stock "would shortly be placed upon a dividend basis" and the fact that the plaintiffs received no dividend, either "shortly" or at any time. But this was only one of numerous statements or omissions on which the jury may have predicated liability. Even if it be assumed that the action was barred in so far as it was based on a misrepresentation as to dividends,[5] this would not preclude recovery on the ground of some other untruth or material omission which reasonable diligence would not have discovered before the critical date. The issue of reasonable diligence on the part of the plaintiffs in making discovery was properly submitted to the jury. Its verdict is conclusive.

 Finally it is urged that the district court did not have jurisdiction of the person of the individual defendant, and that a motion to dismiss the action as to him was erroneously denied. Mr. Clarke was served with the summons and complaint in Philadelphia, where he resided. Under section 22(a), 15 U.S.C.A. § 77v(a), the action may be brought in the district where the sale took place, "if the defendant participated therein," and process may be served in any other district where the defendant may be found. The contention is that no evidence was submitted that Mr. Clarke participated in any way in the sales. When the distilling company was organized in 1934 both Mr. Clarke and his brokerage company were given large blocks of the common stock. If the shares purchased by the plaintiffs where owned by Mr. Clarke, he undoubtedly "participated" in the sales; but whether they belonged to him or to his company the evidence leaves at large. John K. Parker, who testified by deposition, said "I believe Mr. Clarke owned the stock"; but a moment later he said that H. Vaughan Clarke & Co. sold this stock "as principal." Mr. Adams, who negotiated the sales to the plaintiffs, was an employee of the brokerage company. Clearly the latter "participated" in the sales through its agent, regardless of whose stock was sold, for the statute applies to a seller whether he acts as principal or broker. Cady v. Murphy, 1 Cir., 113 F.2d 988, certiorari denied 311 U.S. 705, 61 S.Ct. 175, 85 L.Ed. 458. Although normally Mr. Adams' acts as agent of a brokerage corporation would not be imputed to the corporation's controlling stockholders, we think that the Securities Act of 1933 lays down a different rule in respect to transactions to which section 12 is applicable. Under section 15 of the Act, 15 U.S.C.A. § 77o, every person who controls through stock ownership or otherwise any person[6] liable under section 12 is also made liable "jointly and severally with and to the same extent as such controlled person." The convenience of establishing such joint and several liability in a single suit is obvious. When the venue section, 15 U.S.C.A. § 77v(a), permits the suit to be brought in the district where the sale took place "if the defendant participated therein," we believe that the quoted phrase was intended to include as participants in the sale persons in control of the seller who are subject to the same liability as the seller itself.

The record disclosing no error, the judgment is affirmed.

5 Cf. Rosenberg v. Hano, 3 Cir., 121 F. 2d 818, 821.

6 The term "person" includes a corporation. 15 U.S.C.A. § 77b(2).