**MOORE v. GORMAN et al.**

District Court, S. D. New York.

Jan. 20, 1948.

John H. Kelley, of New York City (John F. Davidson, of New York City, of counsel), for plaintiff.

Emmet, Marvin & Martin, of New York City (Grenville T. Emmet, Jr., of New York City, of counsel), for defendants doing business under firm name of Coffin, Betz & Sullivan.

RYAN, District Judge.

Certain of the defendants, individually and as co-partners conducting business under the name of Coffin, Betz & Sullivan (sometimes hereinafter called defendants), move to dismiss the action. The stated grounds of the motion are: Lack of jurisdiction over the subject matter; lack of jurisdiction over their persons; and improper venue. The motion is made under Rule 12(b) (1) (2) and (3) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The defendants are named as such only in the first of the five claims alleged in the complaint. Accordingly, the motion was heard and is determined in respect to the first claim and on the facts presented in the affidavits as well as on the law. Moore's Federal Practice, Vol. 1, p. 646 et seq. The allegations of the first claim embrace all the defendants joined in the action.

The following is a brief statement of the facts alleged in the complaint and, for the purpose of this motion, established by the affidavits: In October, 1946, the defendants entered into an agreement to sell plaintiff an aggregate of 10,000 shares of the common stock of Medisan Corporation for an aggregate price of $40,000. They, together with other defendants, owned shares of that stock in various amounts aggregating the required total number of shares. Plaintiff agreed to purchase the securities only if they could be re-sold lawfully by plaintiff, as an underwriter, to the public without registration under the Securities Act of 1933. Defendants represented and agreed that they would take all steps necessary to procure and would procure an exemption from registration of the securities under Regulation A of the Securities and Exchange Commission, and that the stock was entitled to such exemption.

On October 31, 1946, John M. McCutcheon received the assembled block of 10,000 shares of stock of Medisan Corporation from the defendants in Philadelphia. He transported them via the Pennsylvania Railroad to New York City. Here he delivered them to plaintiff's bank and received therefor a check for $40,000. McCutcheon, with the check, returned to Philadelphia via the same railroad and delivered the check to defendants' agent. The avails of the check were then proportionately distributed to the defendants. They paid McCutcheon a commission in connection with the sale.

The defendants, prior to that time, had not filed a registration statement with the Securities Exchange Commission concern-

ing the 10,000 shares of stock of Medisan corporation. On November 14 and 25, 1946, the defendants filed with the Commission letters of notification in an attempt to procure exemption of those shares of stock from registration under Regulation A. One of the notification letters was signed by the defendants, the other by their attorney.

Rule 220 of Regulation A (General Rules and Regulations under the Securities Act of 1933, as amended, as issued by the United States Government Printing Office Washington, 1947), provides in substance that certain securities shall under certain circumstances be exempt from registration "Except as provided in rule 221 * * *."

Rule 221 provides, so far as here material, that:

"No exemption under this regulation shall be available for— * * *

"(g) Any securities of an issuer if the issuer, any promoter of the issuer presently connected with the issuer in any capacity, or any person controlling, controlled by, or under common control with the issuer (1) has been convicted within five years preceding the filing of the letter of notification of any felony or misdemeanor involving the sale of any security. * * *."

An exemption from registration under Regulation A could not be procured, because one of the defendants, Harry Liberman, a promoter, vice-president and director of Medisan Corporation, had been convicted of a felony involving the sale of securities in violation of Section 9(a)(2) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78i(a)(2). On December 3, 1946, the defendants and plaintiff were so notified by the regional administrator of the New York office of the Commission. Prior thereto plaintiff had no knowledge of Liberman's conviction.

Upon learning that fact, plaintiff re-purchased all the shares of stock sold to him by the defendants, which he had re-sold to the public at $4.50 per share. Thereafter, he tendered the stock back to the defendants and demanded that they refund the consideration of $40,000, which he had paid for it. The defendants, Coffin, Betz and Sullivan refunded the plaintiff $8,250, the net amount, after commissions paid to Mc-

Cutcheon, which they had received for their part of the shares involved in the sale. Refunds were made in various amounts by certain other defendants. The total of all refunds received by plaintiff is $26,250. Plaintiff demands judgment against all the defendants, including the members of the firm of Coffin, Betz & Sullivan, individually and as co-partners, for $13,750, the unrefunded balance of the consideration of $40,-000 paid by plaintiff to the defendants for the 10,000 shares of stock.

The material portions of Section 12 of the Securities Act of 1933, 15 U.S.C.A. § 77l provide:

"Any person who—

"(1) sells a security in violation of section 77e, or

"(2) sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. May 27, 1933, c. 38, Title I, § 12, 48 Stat. 84."

It will be observed that this imposes civil liabilities for the acts therein described. Plaintiff predicates defendants' liability upon this section.

Defendants' first contention is that the court lacks jurisdiction over the subject matter of the action because their transaction with plaintiff was allegedly "exempted" under Section 4 of the Act, 15 U.S.C.A. § 77d.

So far as here material, section 4 of the Act, 15 U.S.C.A. § 77d, provides:

"The provisions of section 77e shall not apply to any of the following transactions:

"(1) Transactions by any person other than an issuer, underwriter, or dealer; transactions by an issuer not involving any public offering; or transactions by a dealer * * * except transactions within one year after the first date upon which 'the security was bona fide offered to the public by the issuer or by or through an underwriter * * * and except transactions as to securities constituting the whole or a part of an unsold allotment to or subscription by such dealer as a participant in the distribution of such securities by the issuer or by or through an underwriter."

The exemption conferred by section 4 is in relation to section 5 of the Act, 15 U.S.C.A. § 77e. Section 5 prescribes prohibitions relating to the use of the mails or means or instruments of transportation or communication in interstate commerce in certain transactions "Unless a registration statement is in effect" as to the security involved in those transactions.

Section 4, however, does not purport to, nor does it, confer any exemption from the civil liability imposed by section 12(2).

Moreover, defendants' contention that the transaction was exempted fails to meet the essence of the matter. The gravamen of the complaint is that defendants agreed and represented they would procure an exemption from registration of the Medisan stock to enable plaintiff, as underwriter, to re-sell it to the public free of the prohibitions prescribed in section 5, and that the stock was entitled to such exemption under Regulation A. The sale of the stock by defendants to plaintiff and the alleged exemption of that transaction between them from registration is to be distinguished from the re-sale of the stock by plaintiff, as underwriter, to the public, and the exemption from registration which defendants represented could and would be procured by them for plaintiff in connection therewith. Those representations, if proved, would establish liability under section 12(2) regardless of the alleged exemption from

registration under section 4 of the mediate sale between defendants and plaintiff which preceded the latter's contemplated re-sale, as underwriter, of the stock to the public. On that ground, there is no lack of jurisdiction over the subject matter of the action.

It is therefore unnecessary to determine the issue, which is one of fact, of whether or not the mediate transaction between defendants and plaintiff was exempted under section 4. Cf. In the Matter of Harry Marks, Exchange Act Release No. 3906, January 30, 1947, C.C.H. Federal Securities Reports, p. 77, 751, 77, 753, not officially reported; opinion of General Counsel of Commission, Release No. 603 (Class C) December 16, 1935, C.C.H. Federal Securities Law Service, vol. 1, p. 1233, not officially reported.

Defendants further contend that the court lacks jurisdiction over the subject matter of the action because McCutcheon's transportation of the stock from Philadelphia to New York via the Pennsylvania Railroad did not constitute the "use of any means or instruments of transportation or communication in interstate commerce" under section 12(2). McCutcheon's acts as described above are not disputed. The contention that those acts did not constitute the "use of any means or instruments of transportation * * * in interstate commerce" is without merit.

Defendants also contend that the court lacks jurisdiction over the subject matter of the action because McCutcheon was plaintiff's agent. They urge that all his acts were plaintiff's and that there was no act by them upon which to predicate civil liability under section 12(2).

I am not called upon, on this motion, to make a final decision on the merits as to whether McCutcheon was the exclusive agent of the plaintiff, or the exclusive agent of defendants, or the agent of both in one or more of those acts. That issue is left for final determination at the trial. For the purposes of this motion, I find that McCutcheon, who was paid a commission by defendants, was authorized by them at least to effectuate the delivery of the stock and procure payment to them of the con-

sideration therefor by employing, as he did, a means of transportation in interstate commerce. It is incredible that defendants handed to McCutcheon in Philadelphia 10,000 shares of stock in negotiable form, having a purchase price of $40,000., without instructions concerning the delivery of such valuable property against payment of the purchase price by the buyer in New York.

Subsidiary to defendants' argument concerning McCutcheon's agency is defendants' contention that no misleading statement was transmitted between defendants and plaintiff by an interstate instrumentality of transportation or communication. Defendants had their offices in Philadelphia. They did not come to New York. There were no written communications across state lines. The sale consisted of the oral agreement and representations apparently made in Philadelphia when plaintiff went there to negotiate the sale with defendants, and the acts of delivery and payment for the stock through McCutcheon described above.

 Nevertheless, it is clear in principle that jurisdiction of the subject matter of this action exists under section 12(2). In Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875, the Circuit Court of Appeals of the Second Circuit considered that interesting problem against a somewhat different factual background. In that case, unlike this, the securities were delivered by mail. But there, as here, the false representations were not made by any instrumentality of interstate transportation or communication. It was held, notwithstanding dicts to the contrary in other jurisdictions noted in its opinion, that (134 F.2d at page 877):

"In the case at bar the contract of sale was concluded orally and the stock was paid for by the buyers without any use of the mails, but the mails were used for delivery of the stock certificate to the buyers. In our opinion such a transaction falls within both the letter and the purpose of the statute. Section 2(3) of the Act, 15 U.S.C.A. § 77b(3) provides that 'unless the context otherwise requires' the term 'sale' or 'sell' 'shall include every contract of sale or disposition of * * * a security

75 F.Supp.—29½

or interest in a security, for value.' Delivery of the stock certificate pursuant to a contract of sale would seem to be a 'disposition of * * * a security' within this definition; consequently the seller who mails the certificate to the buyer 'sells a security * * * by the use * * * of the mails.' "

There is no distinction in law between delivery of securities by mail, as in the Schillner case, and delivery of securities by transportation, as in this case, by a person who employs an interstate instrumentality of transportation to make the delivery. Such delivery, like delivery by mail, constitutes a "disposition of * * * a security" within the meaning of "sale" or "sell," as defined in section 2(3) of the Act, 15 U.S.C.A. § 77b(3). A seller who thus causes securities to be delivered to a buyer "sells a security * * * by the use of any means or instruments of transportation * * * in interstate commerce," within the purview of section 12(2). Accordingly, defendants' contention of lack of jurisdiction over the subject matter of the action, on the ground that the misrepresentations were not transmitted by interstate means of transportation or communication, is without merit.

 Defendants also contend that jurisdiction over the subject matter cannot be based on the diversity clause of section 24 of the Judicial Code, 28 U.S.C.A. § 41(1) (b), on the alleged ground that the agreement constituted several rather than a joint sale by defendants, with the consequences that the amount actually in controversy in respect to them is less than $3,000, exclusive of interest and costs. The clauses of section 24 of the Judicial Code concerning diversity and amount in controversy are inapplicable here. Section 22(a) of the Act, 15 U.S.C.A. § 77v(a), confers upon the district court jurisdiction of an action arising under the Act, whether or not diversity exists and regardless of the amount in controversy. Deckert v. Independence Shares Corporation, 311 U.S. 282, 288 et seq., 61 S.Ct. 229, 85 L.Ed. 189; 28 U.S.C.A. § 41(1), last sentence, and (8) of that section.

458

In so far as here material, this section provides:

"(a) The district courts of the United States * * * shall have jurisdiction * * * of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *"

Defendants' remaining contentions concern improper venue and lack of jurisdiction over their persons. The defendants are not residents of this district. They conduct their business in Philadelphia. The complaint was served on them there, beyond the territorial boundaries of this court. Plaintiff is a resident of New Jersey. The action was brought in this court in a district in which neither plaintiff nor defendants are residents.

■ Section 22(a) of the Act permits an action to be brought "in the district where the sale took place, if the defendant participated therein." The sale took place within this district, when title to the stock was transferred to plaintiff buyer by delivery thereof to his bank and plaintiff paid the purchase price. Defendants were the owners of part of the shares of stock thus sold to plaintiff. They, therefore, as such owners, "participated" in the sale within this district in New York City, notwithstanding the fact that they were not physically present in this district when it took place. In Schillner v. H. Vaughan Clarke & Co., supra, the Circuit Court of Appeals, upon similar facts, held at page 879 of 134 F.2d: "* * * if the shares purchased by the plaintiffs where owned by Mr. Clarke, he undoubtedly 'participated' in the sales * * *." Cf. also, Personal Property Law, Consol.Laws, c. 41, § 162. Accordingly, there is no basis to defendants' contention of improper venue.

■ Section 22(a), which permits the action to be brought in the district where the sale took place if the defendant participated therein, permits "in such cases" service of process "wherever the defendant may be found." Service of process upon the defendants herein beyond the territorial limits of this court was proper and conferred jurisdiction over their persons.

The motion is in all respects denied.