**SECURITIES AND EXCHANGE COMMIS-
SION v. WIMER.**

Civ. No. 6774.

District Court, W. D. Pennsylvania.

Jan. 21, 1948.

Philip Wagner, of New York City, for plaintiff.

William V. O'Connor (of O'Connor & O'Connor), of Los Angeles, Cal., for defendant.

GOURLEY, District Judge.

This proceeding comes before the Court on defendant's motion to dismiss on the grounds of forum non conveniens or that this Court is an inconvenient and inappropriate forum for the trial of the government's claim for relief.

The Securities and Exchange Commission of the United States on the 29th day of October, 1947 requested the Court, upon the basis of a verified complaint and sworn affidavits, to grant a temporary restraining order in which the defendant would be enjoined from continuing the acts set forth in the complaint. Said motion was duly considered and the following order made by the Court:

"On motion of the plaintiff and upon the verified complaint herein and the sworn affidavits of Edmund Dean, Ira Singleton and James T. Murray, and it satisfactorily appearing that unless defendant is restrained from continuing the acts alleged in the complaint, immediate and irreparable injury, loss and damage will result to members of the investing public, in that

they will be induced by the defendant's fraudulent representations to purchase additional shares of stock of Tennessee Schuylkill Corporation and Great Western Exploration Company at prices substantially in excess of the true value of such stock, it is hereby

"Ordered, adjudged and decreed that the defendant, his agents, servants, employees, attorneys and assigns, and all persons acting in concert or participation with him, be and they are hereby restrained from:

"(1) Directly or indirectly,

"(a) making use of the mails or of any means or instrument of transportation or communication in interstate commerce, to sell or offer to sell the 10 cent par value common stock issued by Tennessee Schuylkill Corporation, or the $1 par value common stock issued by Great Western Exploration Company, or any other security, through the use or medium of any prospectus or otherwise;

"(b) carrying any such security or causing it to be carried through the mails or in interstate commerce, by any means or instrument of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities; provided that the foregoing shall not apply to any security or transaction which is exempt from the provision of Section 5 of the Securities Act of 1933 [15 U.S.C.A. § 77e].

"(2) Directly or indirectly, in the sale of the securities described in paragraph (1) hereof, or any other security, by the use of the mails or of any means or instrument of transportation or communication in interstate commerce, obtaining money or property by means of any untrue statement of a material fact or omission to state any material fact necessary to be stated in order to make the statement made, in the light of the circumstances under which it is made, not misleading, concerning:

"(a) the consideration to be given for the security offered;

"(b) the identity of the person offering the security for sale;

"(c) the price at which the defendant is making sales of the security;

"(d) the value of ore encountered; or

"(e) the payment of dividends.

"This order shall expire ten days after entry in the office of the Clerk of this Court; hearing to be held November 7th, 1947, at 10:00 A.M., E.S.T., Court Room No. 2

"/s/ Wallace S. Gourley, D. J.
"United States District Judge
"Pittsburgh, Pa.
"October 29, 1947
"10:45 o'clock, A.M., E.S.T."

On the 8th day of November, 1947 the plaintiff moved the Court to extend the temporary restraining order from November 8, 1947 to November 18, 1947, for the reason that service could not be made of the original restraining order in accordance with the provisions of the Federal Rules of Civil Procedure 28 U.S.C.A. following section 723c. After hearing was duly held, the Court extended the effectiveness of the temporary restraining order from November 8, 1947 to November 18, 1947.

It appears that service was duly made of the issuance of said temporary restraining order on the defendant in accordance with the Federal Rules of Civil Procedure on the 12th day of November, 1947.

The motion for a preliminary injunction came on for hearing before the Court on November 18, 1947, and was duly argued by counsel for the Securities and Exchange Commission. No one appeared in opposition thereto, and on the basis of the argument, the verified complaint, and the sworn affidavits of individuals informed as to the facts together with the exhibits attached to said affidavits, the Court made the following findings of fact and conclusions of law:

"Findings of Fact

"1. Since on or about February 27, 1942, defendant has been and is now president of Tennessee Schuylkill Corporation, a Delaware corporation, and since February 15, 1946, defendant has been and is now president of Great Western Exploration Company, a Nevada corporation. The principal place of business of both corpora-

958

tions has been and is now, at Chloride, Arizona.

"2. Since February 27, 1942, to the present time, defendant has dominated and controlled Tennessee Schuylkill Corporation and Since February 15, 1946 to the present time, defendant has dominated and controlled Great Western Exploration Company.

"3. No registration statement with respect to any securities issued by Tennessee Schuylkill Corporation has ever been or is now in effect with the Securities and Exchange Commission.

"4. Edmund Dean, of 1235 Sole Street, McKeesport, Pa., purchased on the solicitation of Nye A. Wimer, stock of the corporation known as the American Venture Company, the predecessor of the Tennessee Schuylkill Corporation.

"5. In January 1942, Wimer through long distance interstate telephone informed Dean that he could exchange his American Venture Company stock at the rate of one share of Tennessee Schuylkill Corporation stock for each four shares of American Venture stock by making a payment of $2.25 per share in addition to turning in Tennessee Schuylkill Corporation stock.

"6. Dean was not informed that no cash consideration was required to effect a change of American Venture Company stock to Tennessee Schuylkill Corporation stock.

"7. Wimer falsely represented to Dean that the Tennessee Schuylkill Corporation stock offered for sale was then owned by such corporation and that the proceeds from the sale were going to the corporation, whereas in fact the stock offered and sold by Wimer was his personally-owned stock and the entire proceeds of the sale went to the defendant Wimer.

"8. Defendant falsely represented to Dean that he would not sell any of his Tennessee Schuylkill Corporation stock for less than $20 a share, whereas in fact defendant was actually selling his own Tennessee Schuylkill Corporation stock at 50 cents a share.

"9. On or about February 5, 1943, Dean received at his residence through the mails, from defendant Wimer, Certificate No. 193 covering 300 shares of Tennessee Schuylkill Corporation stock.

"10. On or about February 1, 1945, Dean received at his residence through the mails from defendant Wimer, Certificate No. 917 in the amount of 4,000 shares of Tennessee Schuylkill Corporation stock.

"11. On or about February 5, 1945, Dean received at his residence through the United States mails from defendant Wimer Certificate No. 923, representing 5,700 shares of Tennessee Schuylkill Corporation stock.

"12. Defendant represented by telephone to Ira J. Singleton, of Blainesburg Addition to West Brownsville, Pa., that Great Western Exploration Company had uncovered 400,000 tons of very valuable ore, when in fact no ore having any commercial value had been encountered.

"13. Defendant represented by telephone to Singleton that the company would pay a good dividend before Christmas, 1946.

"14. There was no reasonable basis for predicting the payment of any dividend at that time in the foreseeable future and since the defendant became president, the only operations of the company consisted of unsuccessful attempts to find ore in commercial quantity.

"15. Defendant represented by telephone to Singleton that the stock Singleton was purchasing was being offered for sale by the Great Western Exploration Company in order to finance its operations, whereas in fact the stock offered for sale to and purchased by Singleton was the personally-owned stock of the defendant Wimer.

"16. Securities of Great Western Exploration Company purchased from the defendant Wimer by Singleton were received by him through the mails at his residence in West Brownsville, Pa.

"17. At the time that Singleton purchased his Great Western Exploration stock from the defendant, there was no registration statement with respect to such security in effect with the Securities and Exchange Commission.

"18. Defendant in the sale of Tennessee Schuylkill Corporation and Great Western

Exploration Company stock used the means and instruments of transportation for communication in interstate commerce.

"19. The defendant has been and is now continuing to solicit members of the investing public to purchase securities of the Tennessee Schuylkill Corporation.

"20. There are reasonable grounds for believing that on a trial on the merits plaintiff can support the allegations of the complaint filed herein.

"Conclusions of Law

"1. The Court has jurisdiction over the subject matter of the complaint.

"2. The Court has jurisdiction over the parties to the complaint.

"3. The complaint states a cause of action for which injunctive relief may be granted.

"4. The defendant has been and is now, transacting business in the Western District of Pennsylvania.

"5. The defendant in originating long distance telephone calls and telegrams from points outside of the State of Pennsylvania to members of the investing public in this district, in which he offered to sell securities and in using the mails to deliver such securities in this district after sale, "sold", within the meaning of the Section 2(3) of the Securities Act of 1933 [15 U. S.C.A. § 77b(3)], securities in this district, in that the use of the above media of communication and transportation constituted attempts and offers to dispose of, and solicitations of offers to buy, securities in the Western District of Pennsylvania.

"6. Defendant has been and is now engaged in selling securities in violation of Sections 5(a) (1) and 5(a) (2) of the Securities Act of 1933, 15 U.S.C. 77e(a) (1) and (2) [15 U.S.C.A. § 77e(a) (1, 2)] in violation of Section 17(a) (2) of such act. 15 U.S.C. 77q(a) (2) [15 U.S.C.A. § 77q(a) (2)]

"7. Unless enjoined defendant will continue to engage in such violations.

"8. Plaintiff is entitled to a preliminary injunction restraining further violations of the above sections."

The Court furthermore granted the following preliminary injunction:

"This matter having come on to be heard the 18th day of November, 1947, upon the plaintiff's motion for preliminary injunction, due notice thereof having been given the defendant, and after giving consideration to the verified complaint and to the affidavits and exhibits attached thereto filed in support of its motion for preliminary injunction, and no one appearing in opposition thereto, and

"It appearing to the Court that the defendant will, unless enjoined, violate Section 5(a) (1) and (2) of the Securities Act of 1933, 15 U.S.C. 77e(a) (1) and (2) [15 U.S.C.A. § 77e(a) (1, 2)] and Section 17(a) (2) of the Securities Act of 1933, 15 U.S.C. 77q(a) (2) [15 U.S.C.A. § 77q(a) (2)], it is hereby

"Ordered, adjudged and decreed that the defendant, his agents, servants, employees, attorneys and assigns, and all persons acting in concert or participation with him, be and they are hereby restrained from:

"(1) Directly or indirectly,

"(a) making use of the mails or of any means or instrument of transportation or communication in interstate commerce, to sell or offer to sell the 10 per cent par value common stock issued by Tennessee Schuylkill Corporation, or the $1 par value common stock issued by Great Western Exploration Company, or any other security, through the use or medium of any prospectus or otherwise;

"(b) carrying any such security or causing it to be carried through the mails or in interstate commerce, by any means or instrument of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Securities and Exchange Commission as to such securities; provided that the foregoing shall not apply to any security or transaction which is exempt from the provision of Section 5 of the Securities Act of 1933.

"(2) Directly or indirectly, in the sale of the securities described in paragraph (1) hereof, or any other security, by the use of the mails or of any means or instrument of transportation or communication in interstate commerce, obtaining money or property by means of any untrue

statement of a material fact or omission to state any material fact necessary to be stated in order to make the statement made, in the light of the circumstances under which it is made, not misleading, concerning:

"(a) the consideration to be given for the security offered;

"(b) the identity of the person offering the security for sale;

"(c) the price at which the defendant is making sales of the security;

"(d) the value of ore encountered; or

"(e) the payment of dividends."

It appears that on the 17th day of November, 1947, the defendant, through his counsel, served a copy of the motion to dismiss the complaint for preliminary injunction on a representative of counsel for the Securities and Exchange Commission. However, said motion was not filed in the office of the Clerk of the United States District Court for the Western District of Pennsylvania until November 18, 1947, which was subsequent to the time of hearing on the motion for preliminary injunction.

After it was called to the attention of the Court that the motion to dismiss the complaint had been filed, the Court fixed the 24th day of November, 1947, as the time for hearing on said motion to dismiss the complaint, and furthermore agreed to consider said motion as in the nature of a proceeding to dissolve the preliminary injunction issued on the 18th day of November, 1947.

The motion of the defendant to dismiss the complaint is based on the following grounds:

(1) That said defendant is not a resident, inhabitant or citizen of the Western District of Pennsylvania nor of the state of Pennsylvania.

(2) That the defendant has no office or place of business in the said Western District of Pennsylvania, or in the state of Pennsylvania.

(3) That the District Court of the United States for the Western District of Pennsylvania is not a convenient forum for the trial of said action.

(4) That the most convenient forum for the trial of said action is the District Court of the United States for the District of Arizona.

The action was instituted under the provisions of Section 20(b) and Section 22(a) of the Securities Act of May 27, 1933, its supplements and amendments, 15 U.S.C.A. §§ 77t(b) and 77v(a) to enjoin the defendant from continuing the sale of securities in violation of the Registration and Anti-Fraud provisions of that Act.

It is contended by the Securities and Exchange Commission that the defendant engaged in numerous stock selling activities in the Western District of Pennsylvania. These activities included the transmission of numerous interstate telegrams, and the mailing of stock certificates to certain persons by the defendant in interstate commerce, to persons who reside in the Western District of Pennsylvania. The defendant engaged in numerous interstate telephone conversations with persons in the Western District of Pennsylvania. It is admitted that the defendant was never physically in the Western District of Pennsylvania.

It was the further contention of the plaintiff that under the provisions of the Securities Act protection is afforded to the investing public by requiring the disclosure of the material facts and circumstances bearing on the value of securities which are publicly offered through the mails or interstate commerce. Dissemination of this information is achieved by the requirement that a "registration statement" describing the securities and the issuer be filed with the Securities and Exchange Commission, and by the further requirement that a "prospectus" summarizing the information contained in the registration statement be furnished to each person to whom the securities are offered. These requirements are found in Section 5 of the Securities Act, 15 U.S.C.A. § 77c. Furthermore Section 17(a) of the Securities Act, 15 U.S.C.A. § 77q(a) prohibits fraudulent sales of securities through the mails or in interstate commerce.

The defendant contends that the Tennessee Schuylkill Corporation, a Delaware corporation, of which the defendant is

president, has its principal office in the city of Chloride, state of Arizona, where all the records of the corporation are kept and all persons connected with the corporation reside. That the Great Western Exploration Company, a Nevada corporation, of which the defendant acts as president, also has its principal office in the city of Chloride, state of Arizona, where all records are kept and all persons connected with the corporation reside, with the exception of one person who is a resident of the state of California. That for the reasons heretofore given it would work a hardship on the defendant to require the trial of this proceeding in this jurisdiction, or work substantial injustice to him.

The defendant, therefore, requests the Court to dismiss the proceeding and to dissolve the preliminary injunction issued on the 18th day of November, 1947, and to direct the trial of said proceeding to the United States District Court for the District of Arizona.

It is, in substance, the contention of the Securities and Exchange Commission that the defendant, as President of the Tennessee Schuylkill Corporation and the Great Western Exploration Company, and as the dominating and controlling factor of each company, sold and is now selling to persons in the Western District of Pennsylvania common stock of each company. That the defendant's activities are interstate in nature in that the mails and other means of interstate communication and transportation have been used, and that these activities have been pursued by the defendant with no registration statement as to the stock of either company having been filed with the Securities and Exchange Commission as provided by law. That the activities of said defendant in using interstate facilities for the communication and transportation of said securities are in violation of the provisions of the Securities and Exchange Commission Act in that untrue statements have been made of material facts.

Under the provisions of the Securities and Exchange Commission Act, jurisdiction of this Court in the Western District of Pennsylvania can be based on either the provisions of Section 20(b) or 22(a) of said Act. That part of the Act is known as a Special Venue Statute.

Special Venue Statutes are those statutes which Congress has legislated with reference to a particular kind of action, and has decreed that certain actions might be brought in forums, in some of which the action could not be brought, but for such legislation. The Securities and Exchange Commission in its complaint sets forth the defendant is engaged and will continue to engage in acts or practices which constitute, and which will continue to constitute, a violation of the provisions of said Act, and of rules or regulations prescribed under authority of said Act. It is, therefore, argued that it was proper to file this proceeding in the United States District Court for the Western District of Pennsylvania for the reason that the acts or practices referred to were committed in this district.

In addition thereto, the Securities and Exchange Commission contends that sales took place within this district, that the defendant participated therein, and that the actions of the defendant amounted to transacting business within this district. That Section 22(a) of the Securities Act specifically gives the Securities and Exchange Commission the right to file a proceeding in this district under said circumstances.

The General Venue Statute, Section 51 of the Judicial Code, as amended, 28 U.S.C.A. § 112(a) (b), provides that no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant.

However, Section 22(a) of the Securities Act, 15 U.S.C.A. § 77v(a), provides, inter alia, that District Courts of the United States shall have jurisdiction of offenses and violations under said Act, and under the rules and regulations promulgated by the Commission in respect thereto, of all suits in equity and actions at law brought to enforce any liability or duty created therein where (1) the defendant is found; (2) the defendant is an inhabitant; (3) the defendant transacts business; or (4) the sale took place, if the defendant participated therein.

Process in such cases may be served in any other district of which the defendant is an inhabitant, or wherever the defendant may be found.

If the jurisdiction of this Court is governed by the provisions of Section 22(a) of the Securities Act, it is clear that a large number of sales, as that term is defined in Section 2(3) of the statute, 15 U.S.C.A. § 77b(3), took place in the Western District of Pennsylvania. A "sale" is defined as including "every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." This definition is to be deemed applicable, according to Section 2 of the Securities Act, unless the context otherwise requires.

■ Delivery of securities by mail from one state to the other involves a "sale" of the securities. Where securities were delivered by mail from Pennsylvania to New York, it was held that jurisdiction was properly laid for violations of the Act in the state of New York. Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875.

■ As to the doing of business in the Western District of Pennsylvania, there would appear jurisdiction existing in this Court under the provisions of Section 22 (a) if the business transacted in the district is substantial and has some degree of continuity. Winkler–Koch Engineering Co. v. Universal Oil Products Co., S.D.N.Y., 1946, 70 F.Supp. 77; Lechler Laboratories v. Duart Mfg. Co., S.D.N.Y., 1940, 35 F.S. 839.

■ The quantum of business which must be transacted in a district to permit the laying of venue therein is less than the "doing business" necessary to warrant a finding that the defendant is present, or is to be found, in the district for jurisdictional purposes. Eastman Kodak Co. v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Sure-Fit Products, Inc. v. Fry Products, Inc., S.D.N.Y., 1938, 23 F.Supp. 610; Bowles v. Edwards Mfg. Co., S.D.N.Y., 1944, 57 F.Supp. 887.

■ Furthermore, the mere solicitation of orders which are subject to acceptance or rejection in another state, from which the goods are shipped directly, may constitute "transacting business" for venue purposes. Meyer v. Florists Tel. Delivery Ass'n, S.D.N.Y., 1936, 16 F.Supp. 783; Bowles v. Edwards Mfg. Co., supra.

Jurisdiction is furthermore given to the Court under the provisions of the Securities Act of 1933 in Section 20(b), 15 U.S.C.A. § 77t(b) in which the Commission may, in its discretion, bring an action in any District Court in the United States where the person is engaged or is about to engage in any actions which constitute or will constitute a violation of any provisions of the Act, or any rules or regulations prescribed under authority of said Act. Upon proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

Under modern conditions corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state. In this case the Tennessee Schuylkill Corporation is a Delaware corporation while the Great Western Exploration Company is a Nevada corporation. The statement just made, therefore, has reference to the two corporations of which defendant is President in connection with which the Securities and Exchange Commission contends have not complied with the provisions of the Act.

■ The defendant's main contention for the dismissal of the proceeding is based on the fact that all the records of each of the corporations involved are kept, and all persons connected with said companies are located, in the city of Chloride, state of Arizona; as' a result of which, to require the defendant to appear in this jurisdiction to defend the proceeding would work a severe hardship and substantial injustice to him.

The defendant has seen fit to exploit the affairs of both corporations and engage in the sale of their stocks in the Western District of Pennsylvania. In other words, the defendant, as president of each of

said corporations and as the individual who is apparently empowered to dispose of the stocks of said corporation, saw fit to venture into the fields of Pennsylvania to sow his seeds. A situation has now developed in the harvesting of said crop which the defendant represents is inconvenient and a hardship, or is saying in so many words "I have taken the cream of the crop but I will not touch the chaff". It appears to me that Congress in enacting Sections 20(b) and 22(a) specifically intended that situations of the nature which now exist should require a person to answer for his acts or misdeeds in any district or jurisdiction where there was a failure or neglect to comply with the Act. I cannot bring myself to the conclusion that the defendant did not have knowledge of the Securities and Exchange Commission Act, or that he was not informed as to the restrictions and regulations which govern the sale of securities.

Since the defendant has seen fit to engage in the sale of securities in a jurisdiction far removed from the location where the affairs of each corporation are conducted, I believe that he should be held accountable to answer for any violations of the Securities and Exchange Commission Act which have occurred beyond the place of business of the two corporations.

As in cases brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the plaintiffs' choice of a forum cannot be defeated on the basis of forum non conveniens. This is because, I believe, the Special Venue Act under which this action is brought seems to require it. Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 505, 67 S.Ct. 839; Baltimore & O. R. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222; Miles v. Illinois Cent. R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

■ When Congress enacted the Securities Act, it appears to me it was the intention of Congress to have the special venue provisions of the Act free from the application of the doctrine of forum non conveniens.

However, we will assume that a Federal District Court, in its discretion, can dismiss a cause on the ground that the forum is vexatiously inconvenient to a defendant even where a special venue statute is involved.

The question, therefore, arises whether the exercise of such power is warranted under the circumstances of this case.

■ The doctrine of forum non conveniens does not depend upon whether the action was at law or in equity. Gulf Oil Corporation v. Gilbert, supra; Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 519, 67 S.Ct. 828.

The application of this doctrine has been invoked as a means of declining jurisdiction whenever consideration of convenience, efficiency and justice points to a tribunal other than that chosen by a litigant as the appropriate tribunal.

■ In passing upon the question as to whether the doctrine should be invoked in the instant case, the important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses; possibility of view of premises if found to be appropriate to the action, and all other practical problems that might make trial of a case easy, expeditious and inexpensive. The plaintiff may not, by choice of an inconvenient forum, vex, harrass or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. Gulf Oil Corporation v. Gilbert, supra.

The defendant argues that the doctrine should be invoked for the reason that it would be necessary to call innumerable witnesses, all of whom are residents of the state of Arizona, including two managers; that the defendant will have to transport books, records and many other documents found relevant to the issues raised from the offices of the two corporations in the state of Arizona; that the defendant would be required to travel from the state of Arizona to this jurisdiction, which would necessitate his absence from his duties as president of said companies; that many witnesses that would be called by the defendant would be rep-

resentatives of one or the other, or both, of said corporations, and their appearance in this district would practically result in the close-down of operations of each of said companies; that the expense and burden of defense would work a great hardship and injustice to the defendant; a high cost of obtaining attendance of willing or unwilling witnesses; possibility of view of premises, if view would be appropriate to the action, and all other practical problems that would make trial of the case easy, expeditious and inexpensive.

In connection with a view of the premises, I do not believe that a view would be of any practical value or assistance. The Court's observation as to whether or not a mine, or mines, contains valuable ore would not be the best evidence. The question as to whether or not a mine, or mines, contains a marketable product should be based on the opinion of the engineers who inspect the mine, or mines, and the chemists who make an analysis of the ore.

The Court will weigh relevant advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex", "harass", or "oppress" the defendant by inflicting upon him the expense or trouble not necessary to his own right to pursue the remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Dainow, The Inappropriate Forum, 29 Ill.L.Rev. 867, 889; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col.L.Rev. 1; Gulf Oil Corporation v. Gilbert, supra.

Even if the problem which exists is approached without consideration as to the right of the plaintiff in this case under the Special Venue Statute to file the proceeding in a district court of its own selection, it appears to me that the balance of the equities stand as strong in favor of the plaintiff as in favor of the defendant.

The doctrine of forum non conveniens is an instrument of justice. Courts should be slow to apply it when justice will be delayed, even though not thwarted altogether. Extension of corporate activities,

distribution of corporate personnel, stockholders and directors to the many states, and the diffusion of corporate ownership, separated from corporate management, make the integrity of the conduct of business corporations increasingly a matter of national rather than local concern to which the federal court should be quick to respond when their jurisdiction is rightly invoked.

A corporation would in every instance be subject to some inconvenience to defend itself where an action is filed in a state other than the state of incorporation, the location of its main operation, or the state where its records are kept and maintained. It would be a poorly represented defendant who could not produce substantial evidence and good reasons to establish that the forum of the action against it is most inconvenient.

To apply the broad and indefinite discretion which would arise in deciding whether the doctrine of forum non conveniens should have application to the Securities Act, would inevitably produce a complex of close and indistinguishable decisions from which accurate prediction of a proper forum would become difficult, if not impossible.

When the doctrine of forum non conveniens is invoked, each case must turn on its own facts. The fact that the claim involves complicated affairs of a foreign corporation is not alone a sufficient reason for a federal court to decline to decide the question. Williams et al. v. Green Bay & Western R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311.

The facts in this case plainly indicate to me that it would not be vexatious or oppressive to entertain this suit or claim for injunctive relief in the Western District of Pennsylvania.

A corporation is engaged in transacting business in a district, in the sense of the venue provision of an Act of Congress, if in fact, in the ordinary and usual sense, it "transacts business" therein of any substantial character. A corporation is none the less engaged in transacting business in a district, within the meaning of the venue provision, be-

cause of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. Congress may, in the exercise of its legislative discretion, fix the venue of civil action in a federal court in one district, and authorize the process to be issued to another district in which the defendant resides or is found. Eastman Kodak Co. of N. Y. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Winkler Koach Engineering Co. v. Universal Oil Products Co., S.D. N.Y., 70 F.Supp. 77.

A person who mails a stock certificate to a buyer "sells a security by use of the mails" even if the mails were only used for the delivery of stock certificates after the contract of sale was concluded orally and the stock paid for. Schillner et al. v. H. Vaughan Clarke & Co., supra [134 F.2d 877].

█ It is the province of the judiciary to interpret the laws passed by Congress, and not to seek to correct legislative enactments or to change laws because they have given rise to consequences not contemplated by Congress, no matter how dire the consequences. The separation of power is the basic principle in our democracy and should not be violated by the encroachment of one branch of the government upon the domain of another. If this statute is unjust, the remedy is legislative.

█ Weighing all the factors which should guide the Court's discretion, it seems clear that the showing made herein does not fall within the view that this is one of the "rare cases" in which the doctrine of forum non conveniens should be applied even if the Court had the right to apply said doctrine under the Special Venue Statute of the Securities Act.

I, therefore, believe that the privilege of venue conferred by Sections 20 and 22 of the Securities Act is absolute and the plaintiff's right to bring said action in any district court, or in a district court where the defendant transacts business, or in the district court where the sale took place when the defendant participated therein, is not subject to discretionary denial by the Court when the doctrine of forum non conveniens is invoked.

If the statute which confers jurisdiction vests the court with discretion to decline to exercise that jurisdiction, unquestionably the Court may do so. The Securities and Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., is primarily for the protection of investors, and imposes both civil liability and criminal penalties upon any person who fails or neglects to comply with the terms and provisions thereof, or the regulations promulgated by the Securities and Exchange Commission. The purpose is, therefore, to require complete and truthful statements of all matters in relation to the financial condition of the person who falls within the terms and provisions thereof.

█ I, therefore, have no doubt that the Commission, in the exercise of its powers to enforce the Act, may file a proceeding for injunctive relief in any jurisdiction where business has been transacted, where the individual concerned was involved in the sale of securities where there has been a failure or neglect to comply with the provisions of said Act.

Even if the doctrine of forum non conveniens is not applied for the reasons given in the preceding paragraph, I do not believe that the balance of equities indicate that the defendant is entitled to invoke said doctrine in the instant case.

The motion to dismiss the complaint, to set aside the service of summons, and to dissolve the preliminary injunction is refused for the following reasons:

(1) The Federal District Court has no authority under the special venue provisions of the Securities Act to apply the doctrine of forum non conveniens.

(2) Even if the doctrine of forum non conveniens could be applied under the Securities Act, the Court believes that after consideration of all the factors in this case the doctrine should not prevail.