**UNITED STATES of America,**
**Plaintiff,**

v.

**Leo V. STEFFES and Francis J. Steffes,**
**Defendants.**

**Crim. 240.**

United States District Court
D. Montana,
Billings Division.

Feb. 4, 1964.

———◆———

Moody Brickett, U. S. Atty., Butte, Mont., and Richmond F. Allan, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Gene Huntley, Baker, Mont., for defendant Leo V. Steffes.

JAMESON, District Judge.

Defendant Leo V. Steffes filed two motions to dismiss an indictment charging him with a violation of Section 17 of the Securities Act of 1933 (15 U.S.C. § 77q): (1) on the ground of immunity from prosecution by reason of the provisions of 15 U.S.C. § 77v(c); and (2) on the ground that the indictment does not state facts sufficient to constitute an offense against the United States.

In supporting brief counsel for defendant concedes that he has found no law to substantiate his first motion, and apparently it has been abandoned. In support of his second motion defendant urges that he may not be charged "for a use of the mails that occurs and takes place after the fraud has been fully consummated".

Either interstate commerce or a use of the mails must be established in order to grant jurisdiction to the federal courts. United States v. Cashin, 2 Cir., 1960, 281 F.2d 669, 673–74. The indictment sets forth the incidents surrounding the alleged fraud and then, to allege the necessary jurisdictional facts, charges the defendant with mailing to various persons the stock certificates involved. Defendant contends that this use of the mails is insufficient to grant jurisdiction because the scheme or alleged fraudulent conduct had been completed prior to the mailing of the stock. Thus, defendant argues that the use of

the mails is too far removed from any fraudulent conduct to grant jurisdiction.

██ While it is well established that the mails (since this case is concerned only with use of the mails and not with interstate commerce, the discussion will be so limited) must be used in employing the scheme or fraudulent transaction, United States v. Schaefer, 7 Cir., 1962, 299 F.2d 625, the use required may be entirely incidental to the scheme itself. In United States v. Cashin, supra, the court was concerned with a venue question under an indictment charging a violation of Section 17 of the Securities Act of 1933 (15 U.S.C. § 77q). The court said:

> "The gist of the crimes charged in the indictment, as in most Securities Act cases, is the fraudulent scheme employed in the sale of securities. (Citations omitted.) The purpose of the requirement that there be a use of the mails or other facilities of commerce is solely to create a basis for federal jurisdiction. (Citations omitted.) The use of the mails need not be central to the fraudulent scheme and may be entirely incidental to it. (Citations omitted.) Indeed, in the very case before us the only alleged use of the mails was to confirm purchases already induced by the defendants' deceit."

The question here is whether the mailing of the stock, although admittedly not a central factor in the scheme, is sufficiently incidental to the alleged fraudulent scheme to suffice for jurisdictional purposes.

Defendant relies on the case of Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88. That case involved a prosecution for violation of the Mail Fraud Act. Admittedly, the use of the mails required for a violation of the Mail Fraud Act is quite similar to that required for violation of the Securities Act. In the Kann case the use of the mails relied on was the mailing of a check from the depository bank to the drawee bank. The Supreme Court held there was no violation of the Act, saying

that the "scheme * * * has reached fruition" and that, "The persons intended to receive the money had received it irrevocably." 323 U.S. at 94, 65 S.Ct. at 151.

██ The case is clearly distinguishable from the instant one. Here the use of the mails is between the defendant and one who allegedly has been defrauded—not between two banks which had no connection whatsoever with the fraudulent scheme. It is alleged that the mail was used to deliver the certificates. It cannot be said that the scheme reached final fruition prior to the time that the stocks, the instruments which allegedly were fraudulently sold, were sent to the purchaser.

Schillner v. H. Vaughan Clarke & Co., 2 Cir. 1943, 134 F.2d 875, 877, involved a civil action brought under Section 12 of the Securities Act, 15 U.S.C. § 77l. It was argued that the court was without jurisdiction, the defendant's argument proceeding on a similar ground to that here urged. The court said:

> "In the case at bar the contract of sale was concluded orally and the stock was paid for by the buyers without any use of the mails, *but the mails were used for delivery of the stock certificate to the buyers*. In our opinion such a transaction falls within both the letter and the purpose of the statute. Section 2(3) of the Act, 15 U.S.C.A. § 77b(3) provides that 'unless the context otherwise requires' the term 'sale' or 'sell' 'shall include every contract of sale or disposition of * * * a security or interest in a security, for value.' Delivery of the stock certificate pursuant to a contract of sale would seem to be a 'disposition of * * * a security' within this definition; consequently the seller who mails the certificate to the buyer 'sells a security * * * by the use * * * of the mails.'" (Emphasis added.)

The court recognized that the position taken was contra to the then weight of authority. However, the position taken

in the Schillner case has since gained the support of other courts. Thus, in Blackwell v. Bentsen, 5 Cir. 1953, 203 F.2d 690, 693, the court made the following statements in connection with Section 12(2) of the Act:[1]

> "Though the mails are not alleged to have been used for the purpose of sending out prospectuses or advertising these lands for sale, all deeds and management contracts by which the transactions were consummated were returned by the vendors to the purchasers through the mails. We are aware of the conflict in the authorities on the subject, but in our opinion this is a sufficient use of the mails to bring the case within section 12(2) of the Act. This is a remedial statute. It should be liberally construed to accomplish the dominant legislative purpose in adopting it, which is to prevent the use of the mails, and other instrumentalities of interstate commerce, in the perpetration of investment frauds. Section 12 of the Act, so far as here "material, provides: 'Any person who * * * sells a security * * * by the use of * * * the mails, by means of a prospectus *or oral communication,* (Italics supplied) which includes an untrue statement of a material fact * * * shall be liable to the person purchasing such security from him * * *.' Here the sales were apparently by oral communication, but the transactions were consummated by the use of the mails, which in our opinion brings the transaction within the statute. Delivery of the deeds and contracts is an integral part of the sale."

While no case involving Section 17 of the Act (15 U.S.C. § 77q) and the exact facts here involved has been discovered, the cases discussed supra are persuasive. Some of the language in Creswell-Keith, Inc. v. Willingham, 8 Cir. 1959, 264 F.2d 76, 80, by inference supports this conclusion. The court there was also considering section 12 of the Act. After reviewing the cases discussed herein, the court noted that the cases had reached a proper result under section 12, saying: "While the language in section 17(a) is somewhat broader and clearer than that in section 12(2), it seems unlikely that Congress intended that acts subject to criminal liability under section 17(a) would not create civil liability under section 12(2)."

In view of the foregoing cases, the language of the Act and the purposes for which it was passed, I am persuaded that the mailing of the stock certificates sufficed as a jurisdictional basis for an indictment under the Securities Act.

---

1. See also Moore v. Gorman, S.D.N.Y.1948, 75 F.Supp. 453, Athas v. Day, D.Colo.1958, 161 F.Supp. 916.