A. J. DARWIN and Wife, Catherine Marie Darwin, Lewis R. Wilson, Lewis R. Wilson, Jr., and Wife, Maxine S. Wilson

v.

JESS HICKEY OIL CORPORATION, David H. Hickey and Jess Hickey.

Civ. A. No. 3296.

United States District Court
N. D. Texas,
Fort Worth Division.
June 17, 1957.

668

Hal M. Lattimore, Lattimore & Lattimore, Fort Worth, Tex., for plaintiffs.

C. O. McMillan, Stephenville, Tex., Mack Taylor, Fort Worth, Tex., for defendants.

ESTES, District Judge.

This is a suit brought by A. J. Darwin and wife, Catherine Marie Darwin, Lewis R. Wilson, and Lewis R. Wilson Jr. and wife, Maxine S. Wilson, against Jess Hickey Oil Corporation, a Delaaware corporation, David Hickey and Jess Hickey. The jurisdiction of the federal court is invoked upon the ground of alleged violations of the Federal Securities Act, Title 15 U.S.C.A. §§ 77a–77aa. The complaint also alleges violations of the Texas Securities Act, Arts. 579–580, Art. 600a, Vernon's Tex.Rev. Civ.Stat.* By reason of such alleged violations plaintiffs contend that defendants are liable to Darwin and wife in the sum of $5,770, and to Lewis R. Wilson and Lewis R. Wilson, Jr. and wife in the sum of $2,700.

* Art. 600a repealed Sept. 6, 1955, 54 Leg., p. 255, Chapt. 100, Sec. 41. Arts. 579–1 et seq. 580–1 et seq., effective Sept. 6, 1955, 54 Leg., p. 322, Chapt. 67, Sec. 1.

The complaint alleges that on or about May 12, 1955, defendants sold to plaintiffs Darwin and wife 25,000 shares of stock in the Jess Hickey Oil Corporation for $3,500; 10,000 shares of stock in the Mountain States Oil & Uranium Corporation for $1,000; and an oil and gas lease in Toole County, Utah, for $1,270. It is alleged that on or about June 1, 1955, defendants sold to Lewis R. Wilson and Lewis R. Wilson, Jr. and wife 14,500 shares of stock in the Jess Hickey Oil Corporation for $1,450; 5,000 shares of stock in the Mountain States Oil & Uranium Corporation for $500; and an oil and gas lease in Toole and Davis Counties, Utah, for $750. Plaintiffs demand judgment for the amounts paid for the stock and leases plus interest and costs.

The shares of stock purchased by the plaintiffs had previously been issued to David Hickey. The oil and gas lease assignments were from Jess Hickey and wife. All of the parties are residents of Fort Worth, Texas, and the transactions were consummated in the office of the Hickeys in Fort Worth, Texas. The checks received by David Hickey in the stock transaction were deposited, and subsequently were transmitted by mail from the depositing bank to the bank upon which they were drawn. The lease assignments were sent through the mails after being recorded in Toole County, Utah.

The defendants challenge the jurisdiction of the court on the ground that there was no use of the mails or other facilities of interstate commerce within the purview of the Federal Securities Act. Defendants further contend:

1. That the oil and gas lease assignments are not investment securities within the meaning of the Federal Securities Act.

2. That the federal court does not have jurisdiction of plaintiffs' alleged cause of action which might arise under the Texas Securities Act.

3. That the stock sales by David Hickey were secondary or private transactions, and are exempt under Title 15, § 77d of the Federal Securities Act as being transactions made by a person other than the issuer, or underwriter or dealer.

### Jurisdiction of the Federal Court

■■ The complaint, facts and evidence in the case do not show sufficient use of the mails or other instrumentalities of interstate commerce to invoke the jurisdiction of this court. The sale and purchase of the stocks was by an oral transaction which took place in the office of David Hickey in Fort Worth, Texas. Title to the stocks and complete control and dominion of the checks vested in purchaser and seller at the time of this arm-length transaction. The subsequent transmittal through the mails by the bank in which the checks were deposited to the bank upon which the checks were drawn does not bring the case within the prohibited area of Title 15, § 77e, relating to interstate commerce and the mails.

"It shall be unlawful for any person, directly or indirectly—(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails * * *."

Even though the interpretation of the statute and of the phrase "directly or indirectly", be given a liberal construction it does not follow that the clearing of the checks between the banks, who were not parties to the transaction at all is sufficient to charge David Hickey with selling a security by use of any instrumentality of interstate commerce or of the mails. Neither does the mailing of a lease assignment for recording or after recording constitute sufficient use of the mails because the sales here involved were final, complete and irrevocable before the mails were used. Recording has nothing to do with the passing of title. The mails were not used for the purpose of executing the sales of the stocks or lease assignments. Kann v. U. S., 1944, 323 U.S. 88, 94, 65 S.Ct. 148, 150, 89 L.Ed. 88, is authority for the proposition that it does not suffice

to show that the mails were used after the completion of a scheme.

"The banks which cashed or credited the checks, being holders in due course, were entitled to collect from the drawee bank in each case and the drawer had no defense to payment. The scheme in each case had reached fruition. The persons intended to receive the money had received it irrevocably. It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank. It cannot be said that the mailings in question were for the purpose of executing the scheme, as the statute requires."

■ The jurisdictional element of diversity of citizenship is also lacking. It is undisputed that all of the individual parties were residents of Texas. While the Jess Hickey Oil Corporation, a Delaware corporation, is named as a defendant, the evidence fails to establish that any of the alleged fraudulent sales were made by the corporation. The stocks were sold by David Hickey, and the lease assignments by Jess Hickey and wife, Etta M. Hickey. There were no sales by the corporation itself.

■ Even though there was no use of the mails or facilities of interstate commerce, and no diversity of citizenship, it does not follow that the court is without jurisdiction to decide the federal question presented. Plaintiffs have alleged that this action arises under the Securities Act, Title 15 U.S.C.A. §§ 77a–77aa. The Securities Act is one of those acts regulating commerce. By 28 U.S. C.A. § 1337, the United States District Courts have jurisdiction of "any civil action or proceeding arising under any Act of Congress regulating commerce". The theory was stated in Mulford v. Smith, 1939, 307 U.S. 38, 59 S.Ct. 648, 651, 83 L.Ed. 1092:

"Though no diversity of citizenship is alleged nor is any amount in controversy asserted so as to confer jurisdiction under subsection (1) of Section 24 of the Judicial Code, the case falls within subsection (8) which confers jurisdiction upon District Courts 'of all suits and proceedings arising under any law regulating commerce'."

However, for the court to have jurisdiction under this section a federal question must be alleged. This theory is stated in Barron & Holtzoff, Federal Practice and Procedure, Vol. 1, Sec. 25 as follows:

"If a case involves a federal question, diversity of citizenship of the parties is not required for federal jurisdiction. District courts have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution laws or treaties of the United States."[1]

"A federal question is presented in any case in which the correct decision depends upon the construction of the Constitution, treaties or laws of the United States or on the validity of a statute or treaty."

■ In the instant case substantial federal questions are alleged and the court has jurisdiction to adjudicate such issues. The federal questions are: (1) Were the lease assignments investment securities under the Federal Securities Act, Title 15 U.S.C.A., without proof that any of plaintiffs' money was obtained for, and went into, the drilling of oil wells by the defendants?

(2) Are the stock sales exempted transactions under this Act?

### Oil Leases as Securities

■ The Act defines the term "security" to include, in addition to the well known corporate securities—

" * * * any * * * certificate of interest or participation in any profit-sharing agreement.

---

1. 28 U.S.C.A. § 1331.

* * * investment contract * * * fractional undivided interest in oil, gas, or other mineral rights." Title 15 U.S.C.A. § 77b(1).

It is to be noted that the definition as to oil and gas interest is confined to fractional undivided interests. In the instant case no fractional undivided interests were conveyed. The lease assignments in question do not come within the definition.

S. E. C. v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 64 S.Ct. 120, 88 L. Ed. 88 held that assignments of oil and gas leases in that case were "investment contracts". In that case widely circulated advertising matter was sent through the mails and referred to the leasehold as "securities". Prospective purchasers were urged to "invest"; they were invited to purchase leases on undescribed, unlocated acreage, which was to be selected in each case after the purchase by the promoters. The agreement to drill a well was an integral part of the entire transaction. The well had to be drilled or the entire original lease would have been forfeited. The court held the leases to be "investment contracts" or "investment securities" and seems to have used the terms synonymously.

The following language from S. E. C. v. W. J. Howey Co., 1946, 328 U.S. 293, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 may be a guide in determining whether the lease assignments in question should be considered to be "investment securities" under the Federal Securities Act:

> "In other words an investment contract for the purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a *common enterprise* and *is led* to expect profits solely from the efforts of the promoter or a third party." (Emphasis added.)

The Howey case involved a citrus grove development project. The promoters offered approximately one-half of its citrus acreage to the public in small unmarked plots. The purpose of the offering was "to help us finance additional development." Approximately 42 persons purchased small tracts averaging 1.33 acres in size. The purchasers were urged to accept, and most did accept, a service contract for the care and maintenance of the small unmarked tracts. Through the "service contracts" purchasers had no dominion, possession or control of the acreage purchased. The mails and instrumentalities of interstate commerce were widely used in the scheme. The United States Supreme Court held that these sales contracts, deeds and service contracts were in reality "investment contracts" and were covered by the Act.

A comparison of the Howey and Joiner cases with the case at the bar shows that many of the elements mentioned by the court in holding those transactions to be "investment securities" are not present in the instant case. Those cases were for an injunction; the mails and facilities of interstate commerce were being widely used; the promoters managed, controlled, and were to operate the entire enterprise; investors understood that they were paying for both sales or leases, and a development project. The elements of *common enterprise* and *reliance* upon the sole efforts of the promoter ran throughout the entire transaction.

The case at bar must be distinguished from the Joiner and Howey line of cases because this is a suit for restitution by a purchaser. The proof fails to establish that the mails or facilities of interstate commerce were used in inducing these purchases, or that the money received was used in drilling the well. The purchasers knew that it was a "wildcat" oil venture; that there was no oil in the vicinity, and that they were taking leases on a definitely described tract which was subject to their complete dominion and control. It was neither expressly nor impliedly understood that the promoters were to develop or operate the leases. There was no agreement by the Hickeys to do anything with the leases sold to plaintiffs. While the purchasers had hopes of reselling the leases at a

profit when the nearby well was completed, reliance upon the efforts of others in this case was unjustified and unreasonable.

"No investment contract is involved where a person invests in real estate, with the hope perhaps of earning a profit as a result of a general increase in values concurrent with the development of the neighborhood so long as he does not do so as a part of an enterprise whereby it is expressly or impliedly understood that the property will be developed or operated by others." Securities Regulation by Loss, p. 320.

Because the investors had absolute dominion and control over the property acquired, and because there were no elements of a *common enterprise* in the transaction it is reasonable to conclude that the lease assignments in the instant case were not "investment securities" within the meaning of the Federal Securities Act.

### Exempted Transactions

■ Title 15 U.S.C.A. § 77d, provides that certain transactions in securities are exempt. Among others are transactions by persons other than the issuer, underwriter or dealer. The stock transactions between David Hickey and the plaintiffs relating to the sale of stock in the Jess Hickey Oil Corporation or in the Mountain States Oil & Uranium Corporation come within the exemptions provided for by Sec. 77d of the Act because these stock sales were secondary or private transactions and the Securities Act is not applicable.

### Federal Jurisdiction—Non-Federal Cause of Action

The plaintiffs have alleged violation of the Texas Securities Act as well as of the Federal Securities Act. The latter is federal in character, and has been decided against the plaintiffs. If there is a violation of the Texas Statutes the plaintiffs would be entitled to a separate and distinct cause of action. The purpose of the Federal Act is to assure full disclosure. In defining the term "security" the Federal Act refers to "fractional undivided interest in oil, gas, or other mineral rights." The Texas Act, Sec. 2 (a) does not so limit the definition, but includes " * * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title * * *." Further distinctions between the two Acts have been noted by Meer, "The Security Laws", 20 Tex.Bar Journal 211, 238 (May 1957):

"The federal statute exempts from the registration and prospectus requirements 'transactions by any person other than an issuer, underwriter or dealer.'

"The Texas Act applies to transactions by 'dealers,' 'agents' or 'salesmen', the term 'dealer' being defined to include anybody who sells a security including an issuer selling its own securities.

"Both statutes define 'issuer' to include every person who issues or proposes to issue a security. The Federal Act puts the burden of registration on the issuer. The Texas Act provides that the application for registration shall be filed by either the issuer or a licensed dealer who is offering the securities."

Under the Texas Act the plaintiffs may have a cause of action for violations arising under the laws of the State of Texas. That is for the Texas courts to adjudicate.

■ The alleged violation of the Texas statute is outside the federal jurisdiction, and insofar as plaintiffs' suit is based thereon this action is to be dismissed without prejudice because the federal court is without authority to entertain the State cause of action merely because it was joined in the complaint with another cause of action which was within its jurisdiction.

The leading authority for the proposition that the court should not decide the

non-federal question in this case is Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 589, 77 L.Ed. 1148:

"The rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where *two distinct grounds* in support of a *single cause of action* are alleged, one only of which presents a federal question, and a case where *two separate and distinct causes of action* are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case on the nonfederal ground; in the latter it may not do so on the nonfederal cause of action." (Emphasis added.)

What is the difference between *two separate causes of action* joined in the same complaint, and a *single cause of action based upon two grounds?* "A cause of action may mean one thing for one purpose and something different for another." United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S. Ct. 278, 280, 77 L.Ed. 619.

The Federal Rules of Civil Procedure, 28 U.S.C.A., do not use the phrase "cause of action". The facts, circumstances and laws sought to be enforced must determine whether there are two separate and distinct causes of action or two grounds for a single cause of action.

American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, has made it plain that a separate and independent non-federal claim is not within the constitutional jurisdiction of the federal courts, and that the Judicial Code of 1948 restricted jurisdiction of non-federal matters.[2] Snell, v. Potters, 2 Cir., 1937, 88 F.2d 611; Hydraulic Press Mfg. Co. v. Columbus Malleable Iron Co., D.C.1940, 35 F.Supp. 603; Fur Grooving & Shearing Co. v. Turano, D.C.1941, 39 F.Supp. 877, all hold that the federal court does not acquire jurisdiction of separate and distinct non-federal claims merely because they are joined in the same complaint with a federal cause of action when no diversity of citizenship is shown. Lewis v. Vendome Bags, 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008, Id., 2 Cir.1939, 108 F.2d 16, and Atkins v. Gordon, 7 Cir., 1936, 86 F.2d 595 further indicate the limitations of the Hurn theory.

Because of the differences in the Federal Securities Act and the Texas Securities Act the same identical facts would not support a recovery in each case. Upon application of the above theories to the facts and circumstances of the instant case the conclusion is reached that it is beyond the jurisdiction of this court to adjudicate the alleged violations of the Texas Securities Act. Any cause of action that plaintiffs may have under the Texas statute is dismissed without prejudice.

In conclusion, there was no violation of the Federal Securities Act because the lease assignments were not "investment

---

2. "One purpose of Congress in adopting the 'separate and independent claim or cause of action' test for removability by § 1441(c) of the 1948 revision in lieu of the provision for removal of 28 U.S.C. (1946 ed.) § 71 * * * and important purpose was to limit removal from state courts.²
    *     *     *     *     *
"The Congress, in the revision, carried out its purpose to abridge the right of removal.³

"2. 28 U.S.C. § 1441, 28 U.S.C.A. § 1441, Reviser's Note: ' * * * In this respect it will somewhat decrease the volume of Federal litigation.' * * *
"3. Care was taken to maintain opportunity for state trial of non-federal matters." American Fire & Cas. Co. v. Finn, 341 U.S. 6, at pages 9 and 10, 71 S.Ct. 534, at page 538, 95 L.Ed. 702.

securities" within the meaning of the Act; the sales of stock are exempt under Sec. 77d of the Act, and the Court does not have jurisdiction to adjudicate the alleged violations of the Texas Securities Act.

Counsel will submit a judgment denying relief in so far as this suit is based upon the alleged violation of the Federal Securities Act and dismissing the suit without prejudice in so far as it is based upon matters other than the alleged violation of the Federal Securities Act.