**UNITED STATES of America,**

v.

**Thomas E. ROBERTSON, American-Canadian Oil & Drilling Corporation, Thomas E. Robertson Company, Inc., Defendants.**

United States District Court
S. D. New York.

Dec. 4, 1959.

S. Hazard Gillespie, Jr., U. S. Atty., for S. D. New York, New York City, for the United States, Anthony R. Palermo, Asst. U. S. Atty., Rochester, N. Y., of counsel.

Walter & Tepper, Brooklyn, N. Y., for defendants, Julian C. Tepper, Brooklyn, N. Y., of counsel.

HERLANDS, District Judge.

Novel questions involving the interpretation of the following two penal provisions of the Securities Act of 1933 [15 U.S.C.A. § 77e(a) (1) and § 77q(a) (1)] are raised by defendants' motion to dis-

miss various counts of a twenty-count indictment:

*Section 77e(a) (1)*

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of. any means or instruments of transportation or communication in interstate commerce or of the mails to sell * * * such security through the use or medium of any prospectus or otherwise; or * * *."

*Section 77q(a) (1)*

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) * * *."

The counts may be grouped and considered in terms of the four grounds of attack upon them.

## I.

*Counts 1 to 15*

 The gist of each of these counts is that the defendants, in the offer and sale of a security, by use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, employed a device, scheme and artifice to defraud named investors. U.S.C.A. title 15, § 77q(a) (1). Defendants claim that these counts are "vague and indefinite."

The attack embodied in this branch of defendants' motion is without force.

Preliminary paragraphs 1, 7, 8, 9, 10, 11 and 12 of the indictment clearly indicate that the three defendants are charged jointly with the violations pleaded in counts 1 through 15.

Moreover, Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. is satisfied. The wording of the indictment enables the defendants to understand the nature of the accusation, gives them the needed information to prepare their defense, and makes it possible for them to plead the judgment in bar of another prosecution for the same offense should occasion for doing so arise. United States v. Josephson, 2 Cir., 1947, 165 F.2d 82, 85, certiorari denied 1948, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122, rehearing denied 1948, 333 U.S. 858, 68 S. Ct. 731, 92 L.Ed. 1138, motion for leave to file a second petition for rehearing denied 1948, 335 U.S. 899, 69 S.Ct. 294, 93 L.Ed. 434; United States v. Miller, 2 Cir., 1957, 246 F.2d 486, 488, certiorari denied 1957, 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261.

## II.

*Counts 9, 12 and 13*

Another attack on these three counts is that they do not state that the mailed letter was mailed to induce or bring about a sale; and that the indictment does not refer to the contents or substance of each of the letters so as to link them with any of the preliminary paragraphs 1 to 11 of the indictment.

The attack embodied in this branch of defendants' motion is likewise without force.

██ An indictment drawn substantially in the language of the statute, as is the *indictment at bar, is amply* sufficient, provided that it sets forth all the elements of the crime and its generality neither prejudices the defendants in the preparation of their defense nor endangers their constitutional guaranty against double jeopardy. United States v. Achtner, 2 Cir., 1944, 144 F.2d 49, 51. The defendants' argument is fallacious because, under section 77q(a) (1) it is not necessary for the indictment to plead that the mails were used to induce or bring about the sale, provided the indictment pleads that the defendants, while using the mails "in the offer or sale of any securities," employed a device, scheme or artifice to defraud. See United States v. Monjar, 3 Cir., 1944, 147 F.2d 916, 920–921 and cases there discussed, certiorari denied 1944, 325 U.S.

859, 65 S.Ct. 1191, 1192, 1193, 1194, 89 L.Ed. 1979.

Furthermore, the contents of the letters involved in counts 9, 12 and 13 need not be set forth in the indictment itself. See Moffitt v. United States, 10 Cir., 1946, 154 F.2d 402, 405, certiorari denied 1946, 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625; Wilson v. United States, 2 Cir., 1921, 275 F. 307, 312–313, certiorari denied 1921, 257 U.S. 649, 42 S. Ct. 57, 66 L.Ed. 416.

Counts 9, 12 and 13 of the indictment effectively employ the statutory language.

### III.

*Counts 1, 2, 3, 14 and 15*

These counts, as amplified by certain extrinsic facts stipulated by the Government and the defendants for purposes of this motion, charge a crime under 15 U.S.C.A. section 77q(a) (1). The stipulated facts are:

A. With respect to counts 1, 2 and 3, the checks which the alleged victims gave the defendants in payment of the stock were deposited for collection in banks by use of the mails by defendants or were deposited by defendants in banks which thereafter transmitted the checks by mail to the drawee banks for purpose of collection.

B. With respect to counts 14 and 15, the checks which the alleged victims gave the defendants in payment of the stock were transported in interstate commerce by the defendants for the purpose of having the checks deposited and collected.

C. The use of the mails (in counts 1, 2 and 3) and the use of the facilities of interstate commerce (in counts 14 and 15) took place *after* the defendants had received the checks from the alleged victims. This represented the only use of the mails and the facilities of interstate commerce in the transaction.

Does the above-described use of the mails and the facilities of interstate commerce after the alleged victims paid for the stock by check constitute a use of the mails or the facilities of interstate commerce "in the sale" of securities within the meaning of section 77q(a) (1)?

The answer to this question is not furnished by the original legislative history of section 77q(a) (1). While the House and Senate hearings and reports shed light on numerous other penal provisions in this and related corporate securities legislation (Herlands, Criminal Law Aspects of the Securities Act of 1933, 67 U.S.Law Rev. 562–575, 615–627 [1933]; Herlands, Criminal Law Aspects of the Securities Exchange Act of 1934, 21 Va. L.Rev. 139 [1934]), they do not supply a specific and positive clue to the meaning of the particular phrase under consideration.

Nor can the problem be solved by matching maxim against maxim. The prosecution, urging the court to construe the words "in the sale" broadly in order to effectuate the legislative purpose of protecting the investing public, cites the maxim that a remedial statute (here, the Securities Act of 1933) should be liberally interpreted. Defendants counter with the canon that a penal statute (the provision under consideration) should be strictly construed.

The brocard is an ancient and universal legal phenomenon. Robson, Civilisation And The Growth Of Law, 59–64 (1935). It is rarely a tool of analysis. We have been warned against using legal formulas to dodge difficulty or to "save us from the anguish of judgment." See Marke, The Holmes Reader, 138–139, 142–144 (1955); Frankfurter, Some Reflections On The Reading Of Statutes, 47 Col.L.Rev. 527, 544 (1947). "Mere catchwords, labels and clichés no longer smooth the path of justice as they so often did in the past." Robert Lawrence Company, Inc. v. Devonshire Fabrics, Inc., 2 Cir., 1959, 271 F.2d 402, 407.

The court will not mechanically apply the maxim of strict construction of penal statutes. See Jackson, Problems Of Statutory Interpretation, 1948, 8 F. R.D. 121, 124; 3 Pound, Jurisprudence 663 (1959); Hall, Strict or Liberal Construction of Penal Statutes, 48 Harv.L. Rev. 748, 762–767 (1935); Quarles, Some

162

Statutory Construction Problems and Approaches in Criminal Law, 3 Vand.L. Rev. 531, 538 (1950); Note, Criminal Law and Procedure—Statutory Construction, 32 Mich.L.Rev. 976, 981 (1934).

██ Faced with a similar maxim-contest, the Supreme Court has reiterated that the chief desideratum is to adopt a construction that will best manifest the legislative intent. Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 353–355, 64 S.Ct. 120, 88 L.Ed. 88. As phrased by Mr. Justice Jackson, the governing "doctrine" is "that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." Securities and Exchange Commission v. C. M. Joiner Leasing Corp., supra, 320 U.S. 350–351, 64 S.Ct. 123. In the final analysis, the judicial responsibility is to effectuate the fairly discernible Congressional objectives by reading the statute "with some imagination of the purposes which lie behind" it. Lehigh Valley Coal Co. v. Yensavage, 2 Cir., 1914, 218 F. 547, 553, certiorari denied 1915, 235 U.S. 705, 35 S.Ct. 282, 59 L.Ed. 434, quoted in United States v. N. Y., N. H. & H. Railroad Company, 2 Cir., 1959, 276 F.2d 525; United States v. Brown, 1948, 333 U.S. 18, 25–26, 68 S.Ct. 376, 92 L.Ed. 442; United States v. Alpers, 1950, 338 U.S. 680, 683, 70 S.Ct. 352, 94 L.Ed. 457; Roschen v. Ward, 1929, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722; Bell v. United States, 1955, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905; United States v. Shirey, 1959, 359 U.S. 255, 258, 263, 79 S.Ct. 746, 3 L.Ed.2d 789; United States v. Turley, 1957, 352 U.S. 407, 413, 77 S.Ct. 397, 1 L.Ed.2d 430.

Having thought and written much on the subject of statutory interpretation, Judge Learned Hand, in his most recent pronouncement [Cawley v. United States, 2 Cir., 1959, 272 F.2d 443, 445], declares:

"On the other hand, unless they explicitly forbid it, the purpose of a statutory provision is the best test of the meaning of the words chosen. We are to put ourselves so far as we can in the position of the legislature that uttered them, and decide whether or not it would declare that the situation that has arisen is within what it wished to cover. Indeed, at times the purpose may be so manifest as to override even the explicit words used."

Considering the dominant general purpose and language of the statute, the court concludes that the defendants' use of the mails and the facilities of interstate commerce to realize the proceeds of the alleged victims' checks falls within the condemnation of section 77q(a) (1).

The statute defines "sale" and "sell" as follows:

"When used in this subchapter, unless the context otherwise requires—

* * * * * *

(3) The terms 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. * * *" 15 U.S.C.A. § 77b(3).

Two features suggest strongly that this built-in definition of "sale" and "sell" is not fixed and restrictive. First, the opening words of section 77b containing the clause "unless the context otherwise requires" permits variations in meaning. Secondly, every one of the twelve subparagraphs of section 77b *except* subparagraph (3) uses the words "means" and equates the defined term with the meaning set forth in the statute. The exception, subparagraph (3), does not use the equating word "means." Instead, it employs the words "shall include" and declares that the defined term "shall include" the meaning set forth in the statute.

Evidently, Congress did not intend to freeze the term "sale" into a rigid mold of undeviating contour. The same or nearly identical words may have narrow-

er or broader meanings, depending upon the context in which they are used in different sections of the statute. Cf. Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875.

As used in section 77q(a), the term "sale" is to be equated with the words "sales transaction." Cf. Cresswell-Keith, Inc. v. Willingham, 8 Cir., 1959, 264 F. 2d 76, reversing D.C.W.D.Ark., 160 F. Supp. 735. The word "transaction" integrates such quintessential parts of the deal as the delivery of the sold securities and the payment of the purchase price. Cf. Cresswell-Keith, Inc. v. Willingham, supra.

Payment of the consideration by check is "conditional" in the sense that it is realized by the seller and consummated only when the check is honored and the proceeds thereof collected. 2 Willison, Sales (1948) section 346a; 70 C.J.S. Payment § 24. Payment by check may not be conditional for all purposes in the law of sales, e. g., title to the securities passes upon delivery. But, in interpreting this criminal provision, the court views the sale transaction not only in terms of the law of sales but also in light of the statute's dominant purpose of preventing the victimization of investors. In that aspect, it seems correct to say that the seller regards his bargain equivalent as the money obtained when the check is collected and that the purchaser-victim suffers his actual injury when his bank account is charged with the check given in payment. This realistic approach emphasizes the impact of the fraud rather than formal concepts of the law of sales.

So viewed, the defendants' depositing of the check is a necessary step to obtain ultimate payment of the purchase price.

Since payment of the consideration—including acts performed or caused to be performed by defendants to effectuate payment—is an essential element in consummating the sale transaction, the defendants' use of the mails or the facilities of interstate commerce in depositing the checks or in transmitting them for collection (or causing such deposit or transmittal) constitutes a use of the mails or the facilities of interstate commerce "in the sale" of securities within the meaning of section 77q(a) (1).

For purposes of federal jurisdiction and pleading, the use of the mails or the facilities of interstate commerce in a sale of securities, as used in another section of title 15 U.S.C.A., viz., section 77l(2) has already been held, in civil cases, as not limited to the making of representations inducing the sale but also as relating to the delivery of the securities [Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875; Blackwell v. Bentsen, 5 Cir., 1953, 203 F.2d 690; Cresswell-Keith, Inc. v. Willingham, supra] and to the delivery of payment, under certain circumstances. Cresswell-Keith, Inc. v. Willingham, supra.

In Cresswell-Keith, Inc. v. Willingham, supra [264 F.2d 81], a rescission action under 15 U.S.C.A. § 77l(2), it was the plaintiff-victim who used the mails to complete payments of the purchase price, which use of the mails for such purposes was "pursuant to the terms of the sale agreement" and "pursuant to the directions of the defendants contained in the sale agreement." Applying the doctrine of Pereira v. United States, 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435, the Court held that the plaintiff's use of the mails had been "caused" by the defendants. It was concluded that the complaint stated a claim for relief under section 77l(2).

We recognize that the cited cases involved statutory provisions other than section 77q(a) (2), were civil actions, and did not deal with the seller's use or caused use of the mails or the facilities of interstate commerce in depositing and collecting the purchaser's check after the parties had entered into the transaction and the stock had been delivered. There is no square precedent for this court's decision. However, the court will extend the rationale of the foregoing civil decisions and apply it to the present criminal proceeding.

■■■ The Court's conclusion is expressed in the following propositions:

The Securities Act of 1933 [15 U.S.C. A. § 77q(a)] is violated when a person uses the mails or the facilities of interstate commerce to deposit and collect a check representing the purchase price of securities sold fraudulently by that person. The use of the mails or interstate commerce prohibited by section 77q(a) is not confined to such acts as the defendants' distribution of sales literature or the delivery of the securities sold or, generally speaking, acts prior to the closing of the deal. The particular statute also outlaws acts done after the deal is closed, when those acts are integral parts of the sales transaction, such as steps taken by the defendants to collect the purchase price by depositing the victim's check.

This interpretation of the statute carries out the Congressional objective of protecting investors against stock frauds. This interpretation views the provision relating to the mails and interstate commerce as having been inserted in the Securities Act of 1933 only for the purpose of establishing federal jurisdiction. Congress, in that Act, intended to make use of its full constitutional powers in authorizing the prosecution of those engaged in the fraudulent sale of securities.

The motion to dismiss Counts 1, 2, 3, 14 and 15 is denied.

### IV.

*Counts 16, 17 and 18*

■■■ These counts are framed under 15 U.S.C.A. § 77e(a) (1), which relevantly provides:

"§ 77e. Prohibitions relating to interstate commerce and the mails

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or"

Count 16 involves the mailing of a check, whereas counts 17 and 18 involve the interstate transportation of checks. For purposes of the present motion, it is uncontroverted that the checks were obtained by the defendants from the alleged victims and were mailed (count 16) and transported in interstate commerce (counts 17 and 18) *after* the checks had been obtained by the defendants from the alleged victims.

The court has concluded that the defendants' use of the mails and the facilities of interstate commerce, as charged in counts 16, 17 and 18 and the stipulated facts, does not constitute a crime under section 77e(a) (1).

In Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875, 876, the aggrieved purchaser brought a civil action under 15 U.S.C.A. § 77l. The key words of that section relevant to the present discussion are: "Any person who * * * sells a security" by the use of the mails or interstate commerce "by means of a prospectus or oral communication." In the Schillner case, the false statement had not been transmitted by mail or by the use of interstate commerce; the contract of sale had been concluded orally; and the stock had been paid for by the buyers without using the mails or interstate commerce. However, the mails had been used by the defendants for delivery of the stock certificate to the buyers. The Court, per Swan, J., held that the transaction fell within the letter and the purpose of section 77l because delivery of the stock certificate pursuant to the contract of sale was a "disposition of a security" and hence within the statutory definition of "sell" [section 77b(3)]. Consequently, the seller who mailed the stock certificate to the buyers "sells" a security by the use of the mails even though he did not use the mails for transmitting a prospectus.

What is significant for present purposes is Judge Swan's reference to section 77e(a) (1), which he distinguished from section 77l. Referring to section 77e(a) (1), Judge Swan said that the word "sell" had a narrower meaning in

that section than it has in section 77*l*. Judge Swan pointed out that in section 77e the draftsman expressly differentiated between the use of the mails "to sell" [section 77e(a)(1)] and the use of the mails "for delivery after sale" [section 77e(a)(2)]. The context of section 77e(a)(1) requires a narrower definition of the term "sell" than the term "sells" has in section 77*l*. Judge Swan concluded that the word "sell" in section 77e(a)(1)—unlike section 77*l* (2)—would not encompass the defendants' use of the mails in delivering the stock certificates after the contract of sale had been entered into.

In the case at bar, the defendants did not use the mails the facilities of interstate commerce for delivering the stock certificates. The mails and the facilities of interstate commerce were used only to deposit the purchasers' checks or by the depositing bank to transmit them to the drawee bank for collection. *A fortiori*, Judge Swan's line of reasoning leads to the conclusion that section 77e(a)(1) does not cover the acts charged.

The language in section 77e(a)(1) shows that Congress "has spoken with careful precision, that its words mark the exact spot at which it stops * * *." (Mr. Justice Holmes in Boston Sand Co. v. United States, 1948, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170.)

A "judicial disposition to further the congressional purpose" of curbing stock frauds does not give the court the "liberty to extend such curbs beyond the specific limitations the Congress has imposed." Cf. Ellerin v. Massachusetts Mutual Life Insurance Co., 2 Cir., 1959, 270 F.2d 259, 263. "[T]he detailed particularity with which Congress has spoken has narrowed the scope for needful judicial interpretation to an unusual degree." Cf. Palermo v. United States, 1959, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287.

Section 77e(a)(1) was interpreted in Darwin v. Jess Hickey Oil Corporation, D.C.N.D.Tex.1957, 153 F.Supp. 667, a civil action by aggrieved purchasers. The Court was there faced with a situa-

tion where the sale of the securities was by an oral transaction, in which the securities were delivered by hand to the buyers and the checks were similarly delivered to the sellers. The sellers personally deposited the checks in a bank. The bank transmitted the checks by mail to the drawee banks. The Court held that the defendant-sellers had not used the mails to sell the stocks within the meaning of section 77e(a)(1).

Because section 77e(a)(1) is clearly inapplicable to the acts charged to the defendants herein, it is unnecessary to invoke the principle based upon the policy of political liberty expounded in such authorities as United States v. Universal C. I. T. Credit Corp., 1952, 344 U.S. 218, 221–222, 73 S.Ct. 227, 97 L.Ed. 260; Arroyo v. United States, 1959, 359 U.S. 419, 424, 79 S.Ct. 864, 3 L.Ed.2d 915; Ladner v. United States, 1958, 358 U.S. 169, 177, 178, 79 S.Ct. 209, 3 L.Ed.2d 199; United States v. Wiltberger, 1820, 5 Wheat. 76, 95, 18 U.S. 76, 95, 5 L.Ed. 37; 3 Pound, Jurisprudence, 663–664 (1959).

Counts 16, 17 and 18 are dismissed.