Leroy E. NEWMAN and Norma E. Newman, Plaintiffs,

v.

Ben J. WEINSTEIN, Defendant.

Civ. A. No. P–2660.

United States District Court
S. D. Illinois, N. D.
April 17, 1964.

John Radley, Peoria, Ill., for plaintiffs.

Kavanagh, Bond, Scully, Sudow & White, Peoria, Ill., for defendant.

MERCER, Chief Judge.

This suit was filed pursuant to the provisions of Section 22 of the Securities Act of 1933, as amended, 15 U.S.C. § 77v, for civil relief against the defendant's alleged violation of Section 17 of the Act, 15 U.S.C. § 77q, by a transaction alleged to have been consummated by mail for the sale and transfer to plaintiff of a share certificate representing twelve shares of Arkillfla, Inc., a Delaware Corporation.

Defendant has filed a motion to dismiss the complaint upon several grounds. The principal ground argued in support of that motion is that the transaction alleged in the complaint is an exempt transaction under Section 4 of the Act, 15 U. S.C. § 77d.

In summary, the complaint alleges that plaintiffs entered into a contract for deed on November 10, 1958, with defendant to purchase the Royal Motel near Mountain Home, Arkansas, and paid to defendant a down payment on the contract of $16,-

000.00; that plaintiffs took possession of that motel and made improvements thereon in excess of $1,000.00; the plaintiffs found that the business of the said motel was not as large as had been represented to them, whereupon they asked the defendant to rescind the contract for deed; that, in August, 1959, defendant agreed to cancel the contract, at which time, at defendant's request, and as a part of the same transaction, plaintiffs signed a lease dated November 15, 1958, upon the Royal Motel premises; that, subsequent to the signing of said lease, plaintiffs were informed by defendant that he was indebted to them as a result of the transaction in the amount of $12,347.00, a computation based, apparently, upon the reduction of plaintiff's down payment under the contract by rent on the Royal Motel computed at the rate of $400.00 per month; that defendant, at about the same time that he cancelled the contract, entered into an agreement to exchange the Royal Motel for a motel at St. Petersburg Beach, Florida, known as Bay Isles Apartments; that to effectuate that exchange of property, defendant caused to be incorporated under the laws of Delaware a corporation known as Arkillfla, Inc., after which the Royal Motel was conveyed by defendant to the owner of the Bay Isles Apartments and the owner of the Bay Isles conveyed his equity in those premises to the corporation; that one hundred shares of no par stock in Arkillfla, were issued, of which defendant received 76 shares and one Sam Adler received 24 shares; that the equity of the owner in the Bay Isles Apartments was valued by the parties at $70,000.00 and that the incorporators of Arkillfla placed a value of $700.00 per share on each of the 100 shares issued by that corporation; that at no time did the book value of the stock of Arkillfla exceed $700.00 a share, while the market value of such stock was substantially less; that on September 29, 1959, shortly after the incorporation of Arkillfla, defendant sent to the plaintiffs by United States mail his promissory note in the amount of $12,347.00, and a covering letter saying that the note would

be paid when a sale was made of the Bay Isles Apartments, and that, in the meantime, plaintiffs would be employed as temporary managers of the Bay Isles Apartments; that the condition for payment and the delay in payment had not been assented to by plaintiffs; that immediately after receiving the note plaintiffs came to Peoria to see defendant about payment of the obligation; that defendant then told them of the incorporation of Arkillfla, that the corporation would issue stock to them having a value of at least $12,000.00, and that the Bay Isles Apartments would soon be sold, at which time plaintiffs would receive a large sum of money, possibly exceeding their original investment; that thereafter, defendant, by mail, solicited plaintiffs to return the note and forward their letter of request for the purchase of stock of Arkillfla; that, thereafter, plaintiffs returned the note to the defendant by United States mail after which, on November 17, 1959, defendant delivered to plaintiffs by United States mail at the Bay Isles Apartments certificate No. 3 in Arkillfla, representing twelve shares of no par value common stock of that corporation; that defendant, both before and after the share certificate was mailed to plaintiffs, by his express statements, innuendoes and his conduct deliberately led plaintiffs to believe that said stock was worth $1,000.00 per share and that the corporation was issuing such stock directly to them; that he deliberately concealed from the plaintiffs the fact that those same shares had shortly prior to such transaction been issued to defendant, and the fact that he, through the corporation, was transferring to them from himself shares of stock having a book value of only $8,400.00 and a market value of substantially less, as an attempt by defendant to extinguish an antecedent debt to plaintiffs which exceeded the sum of $12,347.00; and that defendant had knowledge of all material facts as to the value of the shares of stock, and as to the scheme for their issuance to plaintiff, and that he did, through fraud and concealment, induce plaintiffs to enter into the transac-

tion whereby they received the Arkillfla stock, all in violation of Section 77q of Title 15.

Section 77q provides in pertinent part:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or,

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. 77q(a).

Defendant argues that Section 77q is not intended to cover the situation alleged in this complaint, but that that Section is directed at the initial sale and issuance of securities. The crux of that argument is based upon Section 77d which provides, in pertinent part:

"The provisions of section 77e of this title shall not apply to any of the following transactions:

"(1) Transactions by any person *other than an issuer, underwriter, or dealer;* transactions by an issuer not involving any public offering; * * *." 15 U.S.C. § 77d(1).

■ The Securities Act of 1933 is remedial legislation which should be liberally construed in order to fully effectuate the policy of the Act. Securities and Exchange Commission v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88; Creswell-Keith Inc. v. Willingham, 8 Cir., 264 F.2d 76, 80; Whittaker v. Wall, 8 Cir., 226 F.2d 868, 871. Compare, Darwin v. Jess Hickey Oil Corp., N.D.Tex., 153 F.Supp. 667.

■ Giving to the statute a liberal construction, I reject defendant's argument that Section 77d restricts the application of the plain language of Section 77q. Expressly, Section 77d is limited in its application to the provisions of Section 77e which prohibits the use of interstate transportation or communication in the sale of securities for which a proper registration statement has not been filed with the SEC in compliance with the provisions of Section 77l of the Act. 15 U.S.C. § 77l. Thus the limitation contained in Section 77d refers to the sale of securities which have not been properly registered with the Commission.

Section 77q makes it unlawful for any person "in the offer or sale of any securities" by the use of any instrumentality of "interstate commerce or by the use of the mails" to employ any device or scheme to defraud or employ any course of conduct which would operate as a fraud or deceit upon any purchaser.

The term "person" is defined by the Act to include an individual, as well as corporation and other enumerated organizations and groups. 15 U.S.C. § 77b(2).

"The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value. * *" 15 U.S.C. § 77b(3).

The term "interstate commerce" includes "any transportation or communication relating" to the trade of securities among the several states. 15 U.S.C. § 77b(7).

Section 77q speaks in the language of those definitions, which are broad enough to include a transaction for the transfer of securities after issuance, as well as transactions in the issuance of securities. There is no justification for an interpretation of 77d which would void the plain meaning and delete the efficacy of the provisions of 77q.

The court has jurisdiction of the cause of action despite the absence of diversity of citizenship. 15 U.S.C. § 77v(a). The complaint is sufficient to state a cause of action under the provisions of 77q.

Defendant's motion to dismiss the complaint is denied.