Roy J. INGRAFFIA, Plaintiff,

v.

**BELLE MEADE HOSPITAL INC.,** a/k/a Morrison Extended Care Center, Inc., Guedry & Associates, Inc., Norman P. Guedry, Sr., Norman P. Guedry, Jr., Arcene S. Guedry, John S. Arthur and Benjamin O. Morrison, Defendants.

Civ. A. No. 70–467.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Nov. 30, 1970.

Max Nathan, Jr., New Orleans, La., for plaintiff.

Bruce A. North, New Orleans, La., for defendant.

RUBIN, District Judge:

In this suit for civil damages under the two Securities Acts, the plaintiff has alleged the offering of unregistered stock in violation of section 12(1) of the Securities Act of 1933 (the Securities Act)[1] and the making of fraudulent misrepresentations in the sale of stock in violation of sections 12(2) and 17(a)(1) of the Securities Act, and section 10(b) of the Securities and Exchange Act of 1934 (the Exchange Act).[2] By motion for summary judgment, the defendant challenges the power of this court to hear the complaint, contending

1. 15 U.S.C. § 77l(1).

2. 15 U.S.C. §§ 77l(2), 77q(a) (1) and 78j (b).

that the jurisdictional requisites of the two statutes have not been complied with.

■ The Securities Act created a federal cause of action for fraud and for the offering of unregistered securities "by the use of any means or instruments of transportation or communication *in* interstate commerce or by use of the mails.[3] (Emphasis added.) The Exchange Act provides for the award of civil damages to a victim of fraudulent misrepresentations "by the use of any means or instrumentality *of* interstate commerce or of the mails." (Emphasis added.) Plaintiff does not contend that the alleged fraudulent misrepresentations were made by the use of mails or any other instrumentality of commerce. However he contends that four intrastate phone calls were made by Guedry, an officer of Belle Meade to him as a part of the sales transaction,[4] and that this gave the court jurisdiction.

Since Congress' power under the commerce clause to regulate local phone communications has been established[5] this court need decide only a question of statutory construction: does the "interstate commerce" phrase in the jurisdictional clauses mean that these statutes require that the misrepresentation occur *in* interstate commerce? Or does this phrase simply define the kind of "transportation or communication" that is prerequisite and hence make the statute apply to a misrepresentation made by use of an interstate communication facility even though the particular use

may itself be intrastate. If the use must be in interstate commerce, the plaintiff's jurisdictional allegations are obviously inadequate. If any use of the telephone, which is undoubtedly an instrument of interstate commerce,[6] is sufficient, jurisdiction would exist. The difference in the prepositions used in the two statutes may, of course, indicate that Congress intended them to be interpreted differently. Or it may be without substantive significance.·

■■ Section 10(b) of the Exchange Act requires use of an instrumentality *of* interstate commerce. Of the two possible constructions, it seems more natural to view "of interstate commerce" as a modifier of "instrumentality." Four different courts have considered the problem and all but the one that first confronted the issue have so concluded. Myzel v. Fields, 8 Cir.1967, 386 F.2d 718; Bredehoeft v. Cornell, D.Or.1966, 260 F.Supp. 557; Nemitz v. Cunny, N. D.Ill.1963, 221 F.Supp. 571. Contra: Rosen v. Albern Color Research, Inc. E. D.Pa.1963, 218 F.Supp. 473. Defendant has failed to suggest a persuasive reason for rejecting what I believe to be the more natural construction. Thus plaintiff's allegations of telephone communications are sufficient to make out jurisdiction under the Exchange Act and, as to that statute, summary judgment is denied.

Sections 12(1), 12(2) and 17(a) of the Securities Act require use of an instrument *in* interstate commerce. The preposition "in" is commonly understood

---

3. For purposes of this motion, the jurisdictional clauses of the three applicable sections are considered of similar scope. While there are differences in their breadth, see e. g. United States v. Robertson, S.D.N.Y., 1959, 181 F.Supp. 158; Jennings and Marsh, Securities Regulations 832 (1968), such differences do not effect the question of statutory construction presented here.

4. For purposes of the two securities statutes it is unnecessary to prove that the fraud or the unregistered offering was transmitted over the interstate instrument. It is enough if the instrument was em-

ployed as a material part of the sales transaction. See Fratt v. Robinson, 9 Cir. 1953, 203 F.2d 627, 633–634; Blackwell v. Bentsen, *infra*; United States v. Robertson, S.D.N.Y.1959, 181 F.Supp. 158. Such a determination requires the resolution of a complicated factual issue and the defendant has not sought to raise it in his motion.

5. See, e. g. Weiss v. United States, 1939, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.

6. See, e. g. Myzel v. Fields, *infra*; Rosen v. Albern Color Research Inc., *infra*; 15 C.J.S. Commerce § 41.

to denote limitation rather than description. Thus, among the meanings given in The American Heritage Dictionary for it are "During the course of or before the expiration of," and "During or as a part of the act or process of." The dictionary states that the preposition "primarily indicates position, location, or condition." Hence, the more natural reading of the Securities Act's jurisdictional clause would seem to require a use in interstate commerce. Persuasive reasons exist, however, for construing this clause in the same way as the parallel clause in the Exchange Act.

First, there is evident no reason for a difference in construction. The two acts were part of a multipronged attempt by Congress to rectify harmful practices in the sale of securities. Both statutes are remedial in nature and their thrust is toward elimination of fraud and the requirement of complete disclosure in the sale of securities and in the practices of brokers and exchanges. To construe one differently from the others would be to make what seems to be at best an arbitrary distinction because of an otherwise minor variation in text, made (so far as can be determined from the legislative history) without design.

One court has considered this problem and has construed both acts alike in this regard. In Lennerth v. Mendenhall, N. D.Ohio, 1964, 234 F.Supp. 59, 63, the court held that the nature of the facility, not the character of the particular call was decisive. Moreover the Fifth Circuit, in construing a jurisdictional clause of one of the sections of the Securities Act has admonished that "This is a remedial statute (and it) should be liberally construed to accomplish the dominant legislative purpose in adopting it, which is to prevent the use of * * * *instrumentalities of interstate commerce* in investment frauds." Blackwell v. Bentsen, 5 Cir. 1953, 203 F.2d 690, 693, cert. dismissed 347 U.S. 925, 74 S.Ct. 528, 98 L.Ed. 1078. (Emphasis added.) The Eighth Circuit, relying on Blackwell, has held that "Congress intended to assert its full constitutional power in granting civil relief from fraudulent transactions." Creswell-Keith Inc. v. Willingham, 8 Cir. 1959, 264 F.2d 76, 80. One commentator supports his concurrence with impressive statutory history.[7] While the plain words of the statute may not themselves indicate this expansive reading, they do allow a construction broad enough to permit jurisdiction here. Since the remedial purposes of the statute are best implemented by finding the jurisdictional clauses of the Securities Act and the Exchange Act of equal scope the motion for summary judgment as it applies to the Securities Act is also denied.

7. Loss, Securities Regulation 1708 (1961): "[T]he basic goal of providing a federal civil remedy for fraud in the sale of securities preoccupied the Senate draftsmen to such an extent that the predecessor of the present § 12(2) in the amended bill as reported out by the Senate committee omitted any reference to the mails or interstate facilities. S. 875, 73d Cong., 1st Sess. (1934) § 9. Nevertheless, the conferees regarded this provision and § 12(2) of the House bill, which was identical with the present section, as 'substantially similar.' H.R. Rep.No. 152, 73d Cong., 1st Sess. (1933) 27."

In a 1964 Amendment to the Exchange Act, Congress used far broader jurisdictional language. See Section 12(g) (1), 15 U.S.C. 78l(g) (1). In 1964 Congress was undoubtedly more cognizant of the breadth of its powers under the commerce clause than it was in the mid-1930's. That it then acted with clarity in taking advantage of this breadth does not necessarily suggest that it intended to exercise a lesser power at the time of the passage of the original Securities Act.